**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------

FERNANDO NIEVES JR.,

                   Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; JOSEPH ZAZA, former
Principal at Leon Goldstein High School;
DR. ANNE GARNER, former Medical
Examiner for the NEW YORK CITY
DEPARTMENT OF EDUCATION;
ROSEMARY DRIORI, former Payroll
Secretary at Leon Goldstein High School;
JEFFREY CHETIRKO, former Principal of
UA New York Harbor School; JOYELL
SIMMONS, Principal of Murry Bergtraum
High School for Business Careers; UNITED
FEDERATION OF TEACHERS,

              Defendants.

---------------------------------

**COMPLAINT**

    **24-Civ.-___ ( )**

**JURY TRIAL DEMANDED**

      Plaintiff *pro se* FERNANDO NIEVES JR., as and for his Complaint, against

Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1.     This action seeks redress for continuous violations of Plaintiff's rights under the Americans

with Disabilities Act (ADA) of 1990, as amended by the ADA Amendments Act (ADAAA) of

2008, 42 U.S.C. § 12101, et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the New York State Human Rights Law, N.Y. Exec Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Administrative Code §§8-101 et seq. ("NYCHRL"). The Plaintiff, FERNANDO NIEVES, JR., alleges discrimination due to disability, retaliation, harassment, and a hostile work environment, among other claims.[1]

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331, as this matter involves federal questions.

3.      This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 12101. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

4.      This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. §§ 12111, because a substantial part of the acts or omissions giving rise to this action occurred in this District in New York County, New York, and Defendants are subject to personal jurisdiction in this District.

## PARTIES

5.      Plaintiff FERNANDO NIEVES JR. is a resident of Richmond County and the State of New York. Plaintiff was a tenured Social Studies teacher employed by Defendant NYCDOE.

---

[1] Claims continued: constructive discharge leading to Problem Code on plaintiff's Personnel File that plaintiff was not made aware of, age, race, withholding pertinent documents from plaintiff's FOIL Request, prematurely ending plaintiff's health benefits on at least two occasions, not providing SLOAC health insurance for approved leaves, breach of Union Contract (The United Federation of Teachers), a breach of the duty of fair representation by Plaintiff's union (The United Federation of Teachers) to protect Plaintiff's contractual rights as a member of The United Federation of Teachers), plaintiff was not offered COBRA benefits on a timely basis which requires collaboration between defendant and plaintiff's Union (United Federation of Teachers), creation of false documents pertaining to plaintiff, Intentional Infliction of Emotional Stress (IIES) by the New York City Department of Education, a permanent worsening of plaintiff's psychiatric disability, and promissory estoppel.

Plaintiff has a verified psychiatric disability as certified by professionals and the Social Security Administration. On January 06, 2011, U.S. Administrative Law Judge Robert J. Lazarus, declared Plaintiff "disabled" as of October 15, 2008 for Social Security Disability Insurance, which coincides with plaintiff's third psychiatric decompensation at Leon Goldstein High School in Brooklyn, NY. (Exhibit 1)

6.      At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq.*

7.      At relevant times herein, Defendant JOSEPH ZAZA was the principal at LEON GOLDSTEIN HIGH SCHOOL.

8.      At relevant times herein, Defendant DR. ANNE GARNER was a Medical Examiner for the NEW YORK CITY DEPARTMENT OF EDUCATION.

9.      At relevant times herein, Defendant ROSEMARY DRIORI, was the Payroll Secretary at LEON GOLDSTEIN HIGH SCHOOL in Brooklyn, New York.

10.      At relevant times herein, Defendant JEFFREY CHETIRKO was the principal at URBAN ASSEMBLY NEW YORK HARBOR SCHOOL in Manhattan, New York.

11.      At relevant times herein, Defendant JOYELL SIMMONS was and is the principal of MURRY BERGTRAUM HIGH SCHOOL FOR BUSINESS CAREERS in Manhattan, New York.

12.      At relevant times herein, Defendant UNITED FEDERATION OF TEACHERS represented Plaintiff as a union member.

## STATEMENT OF FACTS

13.    Plaintiff was employed as an appointed Social Studies teacher within Defendant NYCDOE from September 2000 through September 2009, achieving tenure in June 2004 after Plaintiff satisfactorily performed his duties for Defendant NYCDOE at Murry Bergtraum High School for Business Careers. Plaintiff first taught social studies at Fashion Industries High School where he was excessed after the first semester, and then was assigned to Murry Bergtraum High School.

14.    Plaintiff has a well-documented, multifaceted psychiatric disability disorder which he was in treatment for since October 1999 with psychologist Dr. Bruce Kellerhouse, PhD. Defendant was aware of Plaintiff's psychiatric disability as of October 2001, when Plaintiff's psychiatric disability symptoms were negatively impacted from the 9/11/2001 Terrorist Attacks in close proximity to Murry Bergtraum High School, necessitating Plaintiff to apply for an unpaid health leave through the end of the school year (06/30/2002). Plaintiff's unpaid health leave was medically approved by Defendant's Medical Division. Plaintiff returned to service at Murry Bergtraum High School in September 2002.

15.    Plaintiff credits his satisfactory performance at Murry Bergtraum High School from 2001 - 2005 to his ongoing disability treatment with his psychologist, Dr. Bruce Kellerhouse, PhD; ongoing medicine management with his psychiatrist, Dr. Robert Conciatori, MD.; and familiarity with his alma mater, Murry Bergtraum High School, where Plaintiff played varsity baseball, interned for the Social Studies Department, and created lasting relationships with faculty

and friends. Plaintiff's 10th grade Global Studies teacher has been Plaintiff's Godfather since May 1990. Plaintiff has a profound fondness for his alma mater.

**2005-2006 School Year**

16.    In mid-April 2005, Plaintiff applied and was awarded a Transfer for Further Integration, aka "Minority Transfer," from Murry Bergtraum High School for Business Careers in Manhattan to Leon M. Goldstein High School in Brooklyn. Plaintiff accepted an Integration Transfer under the applicable UFT-DOE Contract active in Spring 2005 which would allow Plaintiff to return to his former school Murry Bergtraum the following school year, September 2006, if medically necessary. However, the ratification of the UFT Contract in early-November 2005 eliminated Integration Transfers and Seniority Transfers. (Exhibit B).

17.    Plaintiff began his new assignment at Leon M. Goldstein High School in September 2005, which was closer to his home, with the hope of gaining some relief from the chronic insomnia associated with Plaintiff's psychiatric disability.

18.    Soon after starting his new assignment, Plaintiff's anxiety disorder significantly worsened, negatively impacting Plaintiff's chronic insomnia, major depression, and executive function (ADHD). Three weeks after beginning his new assignment, Plaintiff suffered his first psychiatric decompensation on September 26, 2005, requiring Plaintiff to immediately go on an eight-week unpaid restoration of health leave for needed counseling, medicine management, and rest.

19.    During Plaintiff's eight-week health leave, his psychologist, Dr. Bruce Kellerhouse, PhD., and his psychiatrist, Dr. Robert Conciatori, MD., advised plaintiff to file for an ADA Medical Hardship Transfer back to his former school for September 2006 to prevent another psychiatric decompensation and return to plaintiff's former worksite where plaintiff successfully worked with his psychiatric disability for four years.

20.    Plaintiff submitted an Americans with Disabilities Act Medical Hardship Transfer Application request from Defendants' NYCDOE website in mid-November 2005 with supporting medical documentation from psychologist, Dr. Bruce Kellerhouse, PhD., and Dr. Robert Conciatori, MD., which was received by Defendants on November 16, 2005. Plaintiff's psychologist, Dr. Bruce Kellerhouse, PhD., stated his concern in the submitted ADA Medical Hardship Transfer Application that Plaintiff would most likely suffer another psychiatric decompensation if Plaintiff remained at his current site and recommended that a transfer back to his former assignment at Murry Bergtraum High School would help Plaintiff regain a sense of normalcy that would allow Plaintiff to continue teaching successfully with his psychiatric disability. (Exhibit 3)

21.    Plaintiff's then psychiatrist, Dr. Robert Conciatori, also submitted medical documentation in support of Plaintiff's ADA Medical Hardship Transfer Application back to Murry Bergtraum High School, stating that Plaintiff's symptoms were exacerbated while at Leon Goldstein High School, whereas Plaintiff was functioning better with his psychiatric disability at his former site, Murry Bergtraum High School. (Exhibit 4)

22.    Plaintiff returned from an unpaid eight-week health leave to Leon  Goldstein High School on November 21, 2005, and waited to hear for a response from Defendant NYCDOE's Medical Bureau regarding Plaintiff's submitted ADA Medical Hardship Transfer Application to be transferred back to Murry Bergtraum High School in September 2006.

23.    On December 12, 2005, Principal Zaza at Leon Goldstein High School placed a disciplinary letter in Plaintiff's file for absences taken during Plaintiff's health leave after he psychiatrically decompensated on September 26, 2005. This action by Principal Zaza made Plaintiff realize that he was in a hostile work environment as Mr. Zaza retaliated against Plaintiff

for medical absences related to his psychiatric disability, thereby violating ADA regulations. (Exhibit 5)

24.    In mid- to late-December 2005, approximately one month after returning to Leon Goldstein High School from an eight-week unpaid health leave, Plaintiff's anxiety disorder began to worsen, negatively impacting his other disability symptoms of major depression, insomnia, and executive function related to ADHD.

25.    Fearful of sustaining another job-related injury in the form of a second psychiatric decompensation, Plaintiff contacted Defendant NYCDOE's Human Resources Medical Bureau in mid- to late-January 2006 to inquire about the status of his ADA Medical Hardship Transfer Application to be transferred away from Leon A. Goldstein High School and to inform Defendant NYCDOE's Medical Division that his symptoms were progressively worsening.

26.    Defendant NYCDOE continually failed to respond in a timely fashion to Plaintiff's ADA Medical Hardship Transfer Application back to Murry Bergtraum High School. Defendant NYCDOE's Human Resources and Medical Bureau's failure to respond to Plaintiff's request in a timely manner left Plaintiff in limbo as Plaintiff was unable to make decisions to protect himself from further psychiatric injury.

27.    Plaintiff was asked by Defendant NYCDOE's Medical Division to resend his ADA Medical Hardship Transfer Application via fax and/or email, even though Plaintiff sent the initial ADA Medical Hardship Transfer Application by USPS Return-Receipt in mid-November 2005.

28.    Plaintiff resent his ADA Medical Hardship Transfer Application to Defendant NYCDOE's Medical Division on January 23, 2006 and January 29, 2006, but never heard back from Defendants.

29.    By the end of the Fall 2005 semester, Defendants failed to accept Plaintiff's ADA Medical Hardship Transfer Application in a timely fashion and failed to establish an interactive

process with Plaintiff even though the NYCDOE's Medical Bureau initially received Plaintiff's ADA Medical Hardship Transfer Application on November 16, 2005, violating ADA regulations and intentionally discriminating against Plaintiff's verified psychiatric disability, making Plaintiff's anxiety disorder symptoms to worsen.

30.    As the NYCDOE's Medical Bureau failed to timely respond to Plaintiff's ADA Medical Hardship Transfer Application, Plaintiff returned for the Spring semester 2006 to a hostile work environment, where Principal Zaza, on December 12, 2005, placed a disciplinary letter in Plaintiff's file based on plaintiff's absences during an approved eight-week health leave after Plaintiff's first psychiatric decompensation on September 26, 2005, which violated Plaintiff's protected rights under Federal Laws, NYS Laws, and NYC Laws, as mentioned in the PRELIMINARY STATEMENT above.

31.    Shortly after the start of the Spring 2006 semester, Assistant Principal of Organization, Michael Weinstein, assigned Plaintiff to Cafeteria Duty for Plaintiff's C6 Activity, a C6 Activity Plaintiff did not apply for. Plaintiff then reminded Principal Zaza about his anxiety disorder and asked him for an accommodation to a different C6 assignment with an environment that would not further exacerbate Plaintiff's current anxiety symptoms for which Plaintiff was taking anti-anxiety medicine several times per day. Principal Zaza said he would take care of it and speak with Assistant Principal of Organization, Michael Weinstein about changing my C6 Activity. (Exhibit 6)

32.    Although Principal Zaza was aware of my anxiety disorder and promised to change my C6 activity, he failed to do so. Plaintiff's informal request to Principal Zaza for this accommodation was critical for Plaintiff's well-being. Plaintiff suffered a second psychiatric decompensation at Leon Goldstein High School on February 14, 2006, four and a half months after his first psychiatric decompensation at Leon Goldstein High School, and three months after

submitting his ADA Medical Hardship Transfer Request Application on November 16, 2005. Plaintiff's symptoms significantly worsened after suffering a second decompensation. Defendant's disregard for the law and accompanied negligence with Plaintiff's verified psychiatric disability led to Plaintiff's second psychiatric decompensation, causing Plaintiff's psychiatric disability to worsen as a whole.

33.     After Plaintiff suffered a second psychiatric decompensation on February 14, 2006, Plaintiff had to go on an immediate unpaid health leave due to the significant worsening of his psychiatric disability. Plaintiff's second psychiatric decompensation would have been prevented if the NYCDOE's Medical Bureau acted in a timely manner to respond to Plaintiff's ADA Medical Hardship Transfer Application Request submitted on November 16, 2005. Additionally, Principal Zaza was also responsible for Plaintiff's second psychiatric decompensation by intentionally creating a hostile work environment in which he placed a disciplinary letter in Plaintiff's file as punishment for taking necessary medical absences after Plaintiff's first decompensation on September 26, 2005, and for intentionally keeping Plaintiff in a C6 Assignment in the Cafeteria, an unhealthy environment for Plaintiff's anxiety disorder, and taking away Plaintiff's co-teacher knowing that this particular class was so unruly that two teachers were assigned to this class the prior year. Mr. Zaza did not protect Plaintiff from further harm; he intentionally created a hostile work environment that led to the worsening of Plaintiff's psychiatric disability. The damage was so profound that it morphed Plaintiff's psychiatric disability into a new "monster" that required more advanced treatments that negatively impacted Plaintiff's life as a whole.

34.     Plaintiff's second psychiatric decompensation on February 14, 2006 serves as the catalyst for the rest of this complaint as administrators at the NYCDOE targeted Plaintiff by continuously violating his contractually rights per the UFT contract, while the UFT repeatedly

failed to protect Plaintiff's contractual rights, as Mr. Kit Wainer, former UFT Chapter Leader at Leon Goldstein High School, had intimate knowledge of Plaintiff's situation.

35.    Unbeknownst to Plaintiff, Principal Zaza wrote two letters, dated February 2, 2006, to the Local Instructional Superintendent, Ann Organisciak, requesting a 2568 medical examination of Plaintiff for excessive absences even though Principal Zaza knew of Plaintiff's psychiatric disability and Plaintiff's submission of an ADA Medical Hardship Transfer Application on November 16, 2005. Instead, Mr. Zaza should have inquired with the NYCDOE's Human Resources and Medical Bureau about the status of Plaintiff's ADA Medical Hardship Transfer Application Request of November 16, 2005. Principal Zaza's action served to punish me for needing to take time off due to my verified psychiatric disability, which amounts to disability discrimination that violates my protected status under Federal, State, and NYC Laws.

36.    Principal Zaza's second letter dated February 2, 2006, to the Local Instructional Superintendent, Ann Organisciak, informed her of Plaintiff's 'excessive absences' and conveniently left out that he already knew of plaintiff's verified psychiatric disability. Mr. Zaza vaguely mentions that Plaintiff "sent his medical documentation to the Department to certify that [Plaintiff] was unable to work", without specifically mentioning that he already knew that Plaintiff submitted an ADA Medical Hardship Transfer Application request on November 16, 2005, two and a half months prior. Mr. Zaza then stated he placed a disciplinary letter in Plaintiff's file on December 12, 2005 based on Plaintiff's absences associated with Plaintiff's psychiatric disability and psychiatric decompensation. Mr. Zaza continued to inform Ann Organisciak that on January 24, 2006, Plaintiff asked to have his C-6 Assignment of Cafeteria Duty to be changed because "that atmosphere makes me anxious", even though he already knew Plaintiff's anxiety disorder was exacerbated significantly requiring Plaintiff to use anti-anxiety medication several times per day. Mr. Zaza finishes his letter with an excuse to continue subjecting Plaintiff to hostile

environments that significantly increased Plaintiff's anxiety symptoms. Principal Zaza justified his discriminatory treatment of Plaintiff by stating: "As a result of re-organization, one class that [Plaintiff] was teaching was no longer designated as CTT and therefore the school removed his co-teacher. Mr. Nieves expressed concern to his assistant principal that he could not manage the class by himself". Principal Zaza's last statement implies the difficulty of teaching this particular CTT class that required a co-teacher the previous year even though a senior teacher, Mr. Kit Wainer, was the lead teacher. The sum of these two letters by Principal Zaza was a pretext to intentionally continue to discriminate against Plaintiff's verified psychiatric disability, and to continue violating Plaintiff's protective rights under the ADA, ADAAA, and other Federal, State, and NYC Laws.

37.    Upon further inspection of Principal Zaza's two letters conveniently dated February 2, 2006, the fax heading on top of each letter displays the date February 16, 2006, two days after Plaintiff's second decompensation. Principal Zaza's letters were backdated in order to provide cover for continually violating Plaintiff's protective rights as a disabled person, and to make it appear that Principal Zaza asked the Local Instructional Superintendent, Ann Organisciak, to arrange for a medical examination of Plaintiff using NYC Education Law 2568 prior to Plaintiff's second decompensation at Leon Goldstein High School on February 14, 2006. (Exhibit 7)

38.    The New York City Department of Education's Human Resources and Medical Bureau, as well as Principal Zaza, and anyone connected to these fabricated letters, intentionally violated ADA regulations, meant to protect Plaintiff from employment discrimination based on his verified psychiatric disability, with impunity. An investigation of this matter is needed in order to find out who was directly involved in egregiously continuing to violate Plaintiff's protected rights under Federal, State, and NYC Laws.

39.     To provide cover for their malfeasance, Defendants used NYC Education Law 2568 to continue violating Plaintiff's protected disability rights under Federal, State, and NYC Laws, which amounts to Deprivation Of Rights Under Color Of Law (Section 242 of Title 18).

40.     On February 17, 2006, four days after Plaintiff's second psychiatric decompensation at Leon Goldstein High School, Plaintiff received an adversarial letter from NYCDOE's Medical Bureau mandating that Plaintiff appear for a 2568 Medical Examination on March 10, 2006.

41.     On March 10, 2006, Plaintiff, accompanied by UFT Representative Tony Sclafani, met with Dr. Anne Garner, who promptly started her "examination" to create a false narrative of Plaintiff with an "Unfit for Duty" rating on Dr. Anne Garner's medical report, which does not include medical documentation supplied by Plaintiff's doctors, is sent to the Superintendent. (Exhibit 8)

42.     Plaintiff inquired about the ADA Medical Hardship Transfer Application received by Defendants on November 16, 2005, and Dr. Anne Garner responded that they did not have the authority to transfer Plaintiff. Soon after Dr. Anne Garner's medical evaluation, Plaintiff wrote down what occurred during the medical evaluation. A copy of Dr. Anne Garner's medical evaluation of Plaintiff on March 10, 2006, displays her retaliatory animus against Plaintiff. Dr. Anne Garner approved Plaintiff's unpaid health leave request from 09/27/2005 through 11/21/2005 as well as Plaintiff's unpaid health leave request from 02/15/2006 through 06/30/2006.

**2006-2009 School Years**

43.     This pattern of continuous violations of Plaintiff's protected rights by Defendants continued from August 2006 through September 2009. During Plaintiff's approved health leave from March 10, 2006 through June 30, 2006, Plaintiff's health insurance was discontinued,

thereby hindering Plaintiff's much-needed treatment, leading to a worsening of Plaintiff's psychiatric disability. At Plaintiff's next 2568 medical examination on August 4, 2006, Dr. Anne Garner's retaliatory animus is evident again. Plaintiff mentioned the premature discontinuation of health benefits denied Plaintiff of any opportunity to receive proper treatment. Dr. Anne Garner significantly downplays this egregious error on her part by stating on her 2568 Medical Review that "Plaintiff's health insurance was 'accidentally discontinued'. Plaintiff inquired about his ADA Medical Hardship Transfer Request of November 16, 2005, and Dr. Garner said she did not have the authority to transfer me. On September 01, 2006, Dr. Anne Garner added to her August 4, 2006, 2568 Medical Evaluation of Plaintiff, "Unfit for Duty" and recommended "Retirement / Resignation".

44.     Plaintiff's unpaid health leave was medically approved for September 2006 through June 30, 2007. During this medically approved unpaid leave of absence, Plaintiff's health insurance was not restored. Plaintiff's psychiatric disability symptoms continued to worsen. Additionally, Plaintiff's constant worrying about the unfortunate circumstances of his job, inflicted significant mental stress that negatively impacted Plaintiff's psychiatric disability, causing Plaintiff to become a recluse as he developed agoraphobia, unable to leave home for weeks at a time, and eventually not able to leave home for months at a time.

45.     On July 10, 2007, Plaintiff had his third 2568 medical examination with Dr. Anne Garner. Plaintiff was accompanied by a friend, Steve. Prior to the start of Dr. Anne Garner's 2568 medical examination, Plaintiff asked if he could record the medical examination, to which Dr. Anne Garner agreed. Again, Dr. Anne Garner's retaliatory animus is evident from her written report, as she continued to build a false narrative of Plaintiff. When Plaintiff asked her about the status of his ADA Medical Hardship Transfer Application, she responded that they were not accepting Plaintiff's accommodation request. Plaintiff mentioned that his psychiatric disability

symptoms worsened as his health insurance was not restored during his currently approved health leave. As Dr. Anne Garner's medical examination record shows, she states that I could go to a psychiatric clinic. Dr. Audrey Jacobson, Medical Director of Medical, Leaves, and Benefits, also suggested I go to a psychiatric clinic. Plaintiff asked Dr. Anne Garner and Dr. Audrey Jacobson why they could not restore Plaintiff's health insurance and did not receive a response. Dr. Audrey Jacobsen stated that I would need to submit medical paperwork if I wanted to request a leave for September 2007 through June 2008. Without health insurance, Plaintiff was required to quickly find a psychiatrist and submit medical documentation to support an application for an unpaid leave request.

46.    Plaintiff went to Saint Vincent's Hospital in July 2007 and was assigned an intern, Dr. Catherine Saxbe, MD. After 3 or 4 sessions, Dr. Catherine Saxbe sent the medical information in support of my unpaid leave application. As Dr. Catherine Saxbe states in her letter, she only met with Plaintiff three or four times so her evaluation was limited. (Exhibit 9)

47.    Dr. Ann Gardner seized the opportunity to write more untruths about me when she reviewed my chart on 02/15/08. She used Dr. Catherine Saxbe's medical documentation four months after submission to parrot Dr. Catherine Saxbe's review claiming Plaintiff was not as disabled as he claimed to be. Dr. Ann Garner seemed so eager to trivialize my illness that she even used the wrong date written on Dr. Catherine Saxbe's letter. Dr. Anne Garner further states that she found this [Saxbe's claim that I was not as disabled as I claimed] to be true "at [my] 07/10/07 exam with her. Dr. Gardner finishes her review by writing, "His prognosis for providing effective and continuous service is poor. [*Yet*] Health leave not warranted. Retirement (resignation) advisable".[2] On the same day of

---

[2] Dr. Gardner also recommended Resignation (Retirement) on 08/04/06 and stated in her 07/10/07 report that "[her] concern however is his prognosis for continuity of service given his chronic dysfunction."

her review, Dr. Anne Garner denied Plaintiff's unpaid Restoration of Health Leave, claiming that Plaintiff was "FIT FOR WORK". This is nonsensical. Dr. Anne Garner used a letter from Dr. Saxbe, an intern at St. Vincent Catholic Medical Center, that Plaintiff met with for about a month, and disregarded all the other reports submitted from Plaintiff's more experienced doctors over the years.  Dr. Garner's examination notes on March 10, 2006; August 4, 2006; July 10, 2007; and February 15, 2008; all serve to cast blame on Plaintiff for the worsening of Plaintiff's psychiatric disability and to treat Plaintiff unprofessionally. After every visit with Dr. Anne Garner, Plaintiff felt worse.

48.    Dr. Anne Garner's retaliatory animus toward Plaintiff is further exposed by her comments on February 15, 2008 pertaining to Plaintiff's psychiatric disability in her 2568 medical chart review. Dr. Anne Garner's lack of credibility is exposed because she wrote this disparaging review of Plaintiff five months after Plaintiff was hospitalized at Saint Vincents Hospital for suicidal ideation brought upon Plaintiff from Dr. Anne Garner's continued retaliatory animus, harassment, and Mr. Zaza's continued harassment of Plaintiff by sending letters to Plaintiff stating Plaintiff "failed" to do something, completely disregarding that Plaintiff's psychiatric disability was worsening from this harassment. Defendants used these documents to paper Plaintiff's file to create a false narrative of Plaintiff. A comparison of Plaintiff's personnel file from Murry Bergtraum High School with Plaintiff's personnel file at Leon Goldstein High School clearly displays the continual abuse Plaintiff suffered at Leon Goldstein High School.

49.    After decompensating two times in less than one year (September 2005 and February 2006), having received no help by NYC DOE Medical Bureau or the United Federation of Teachers, regarding the Medical Hardship Transfer Application they intentionally ignored,

continually violating Plaintiff's protective rights under Federal, State, and NYC Laws, creating false backdated documents to cover their malfeasance in order to continue violating Plaintiff's protective rights, sending Plaintiff to unnecessary 2568 Medical Reviews that clearly display Dr. Anne Garner's retaliatory animus and lack of credibility, prematurely ending Plaintiff's health benefits on several occasions, and intentionally causing Plaintiff's psychiatric disability to worsen, Plaintiff decided to help himself transfer out of Leon Goldstein High School by using the online Open Market Transfer System during the Spring & Summer of 2006, 2007, and 2008, applied to hundreds of open vacancies, received a few interviews, but conspicuously was not offered a position. All of the efforts Plaintiff made to transfer out of Leon Goldstein High School were unsuccessful, so 2 ½ years after Plaintiff's second psychiatric decompensation at Leon Goldstein High School, Plaintiff was "forced" to return to Leon Goldstein High School on August 28, 2008.

50.    All assigned teachers, by the DOE/UFT contract, are eligible for Health Insurance benefits from the first day of school. Plaintiff needed these health benefits in order to restart treatment for Plaintiff's psychiatric disability. Plaintiff inquired with the payroll secretary, Rosemary Driori several times for the paperwork to restore Plaintiff's health benefits, yet she, for whatever reason, did not provide Plaintiff with the requested forms. Plaintiff worked from 08/28/08 and was finally given the needed form and signed it on 10/03/08. The payroll secretary, Rosemary Driori signed her section on 10/6/08. Principal Zaza knew I had a serious medical condition and yet he allowed this to happen. By 10/06/08 my symptoms worsened, especially my anxiety and insomnia. Just as Dr. Bruce Kellerhouse, PhD stated in his November 10, 2005 letter in support of my Medical Hardship Transfer Application, "***It is my opinion that Mr. Nieves lacks the internal emotional resources necessary to negotiate a successful transition to Leon Goldstein High School and that he will most likely decompensate again if he remains there.***

*Mr. Nieves' disorder qualifies as a disability under the Americans with Disabilities Act (ADA). As such, he is entitled to reasonable accommodations from his employer. In Mr. Nieves' case, my recommendation is that he returns to his former assignment at Murray Bergtraum High School where a return to familiar surroundings and subject content will have a stabilizing effect such that he can return to and maintain a normal level of functioning, similar to that which he had previously enjoyed there*".

51.    Plaintiff psychiatrically decompensated for the third time on October 15, 2008, after waiting seven weeks for the activation of his health benefits. Again, defendants broke the United Federation of Teachers contract, and the United Federation of Teachers failed to protect Plaintiff's contractual rights as a union member. Plaintiff's psychiatric disability permanently worsened as a result of the continued abuse by Defendants. Plaintiff applied for an unpaid health leave for restoration of health from 10/15/2008 through 06/30/2009. Although Plaintiff worked for seven weeks, his health benefits were not restored. Defendant medically approved plaintiff's health leave.

52.    Plaintiff used the Open Market Transfer System from 04/2009 through 09/11/2009 to obtain a transfer from Leon Goldstein High School. Plaintiff was now certified in secondary mathematics and social studies, but Plaintiff was not offered a position. In April 2009, Plaintiff informed the Assistant Principal of his department that he was not returning to Leon Goldstein High School for the 2009-2010 school year. After Plaintiff was notified on 09/12/2009 that the last school he interviewed with would not be able to provide him with a math position, Plaintiff sent Principal Zaza an email on 09/16/2009 asking for needed paperwork to extend Plaintiff's health leave. The NYCDOE's HR and Medical, Leaves, and Benefits Department, failed to provide Plaintiff with an accommodation, leaving Plaintiff in a hostile environment where Plaintiff suffered three psychiatric decompensations. Principal Zaza responded to Plaintiff's valid

request as a person with a verified disability, by sending Plaintiff an adversarial letter, using a FedEx Next Day Envelope, stating unfounded disciplinary charges, and requesting I meet him in his office for a disciplinary conference. Principal Zaza's adversarial letter further confirmed to me that Leon Goldstein was a hostile environment. I was constructively discharged on 09/19/2009.

53.    Defendants placed a problem code on my file, 'Retirement / Resignation', which continues to violate my rights as a disabled person. Defendants intentionally withheld this information from Plaintiff, denying Plaintiff due process to defend himself from this unlawful, discriminatory problem code. The United Federation of Teachers failed to protect Plaintiff's contractual rights from continued abused by the NYCDOE.

### 2010-2012

54.    Plaintiff applied to the NYCDOE New Teacher Finder for 2010, 2011, and 2012. Plaintiff was accepted to the NYCDOE New Teacher Finder for 2010, 2011, and 2012, but was not offered a position. Plaintiff felt hopeless after trying so hard to continue his teaching career. Plaintiff's psychiatric disability worsened.

### 2012-2022

55.    Plaintiff's psychiatric disability permanently worsened to a level where traditional treatments were no longer effective. Plaintiff's medical records will show the various drug combinations used that failed to help Plaintiff's psychiatric disability symptoms. In January 2010, Plaintiff reluctantly tried Nardil, an MAOI, and experienced a period of remission that was categorized as hypomania. The side effects were intolerable: blackouts, tardive dyskinesia, unexpected falls leading to injuries, hypomania, blood pressure abnormalities leading to one hypotensive incident, and rapid weight gain. Eventually Plaintiff was weaned off of Nardil by late 2010 or early 2011.

56.     In 2011, Plaintiff started Parnate, another MAOI, but could not tolerate negative side-effect, such as increased lethargy, collapsing, acne/rash on shoulder blades, and no improvement in mood.

57.     As the years progressed, Plaintiff used EMSAM, another MAOI, for an extended time, but it did not help Plaintiff's symptoms enough and caused negative side effects like worsening insomnia, increasing anxiety, bouts of anger, weight gain, and skin lesions. I was on Ambien CR 12.5 mg when I started EMSAM, but it did not help Plaintiff's insomnia. Plaintiff's psychiatrist, Dr. Alan Schwarts added Clonazepam 1mg to address Plaintiff's worsening insomnia and anxiety. Plaintiff was on this regimen for about one year as the negative side effects became increasingly more intolerable.

58.     In early 2016, Plaintiff tried Ketamine Infusion Therapy with Dr. Glen Brooks, MD., but Plaintiff did not feel a sustained relief of symptoms.

59.     In early-Spring of 2016, Plaintiff underwent sixty sessions of Transcranial Magnetic Stimulation with Dr. Shelly Menolascino, MD., but the positive improvement did not last long after treatment terminated.

60.     In 2017, Plaintiff started Electroconvulsive Treatment with Dr. Kellner at Mount Sinai Hospital. Plaintiff could not manage the side effects and discontinued treatment after three sessions.

61.     In 2019, Plaintiff underwent sixty sessions of Deep Transcranial Magnetic Stimulation at NeuroCare TMS in Midwood Brooklyn. Similar to Plaintiff's experience with TMS treatment, the positive improvement did not last long after treatment terminated.

62.     In 2018, Plaintiff sought the help of Dr. Jonathan Stewart, MD., from Colombia University. Dr. Jonathan Stewart, MD., conducted numerous clinical trials focused on helping people with Treatment-Resistant Major Depression. After four years of treatment, Plaintiff's

symptoms went into remission. In the spring of 2022, Plaintiff was fit to work again after twelve years of ineffective treatments.

### 2022-2023 School Year and Attempt to Return to DOE

63.     Plaintiff applied to the NYCDOE New Teacher Finder and Plaintiff's application was approved in late-May 2022. Plaintiff earned NYS Professional Math Certification in 2021 and applied for Math Vacancy positions listed in the New Teacher Finder. Plaintiff also mailed resumes to schools of interest in search of a math vacancy for which Plaintiff was qualified.

64.     On April 26, 2022, Plaintiff completed the NYC Online Teacher Application.

65.     On May 23, 2022, Plaintiff was accepted to the NYC New Teacher Finder Candidate Network.

66.     On June 6, 2022, Plaintiff was interviewed at Manhattan Comprehensive Night and Day High School for a Night Position.

67.     On June 8, 2022, Plaintiff was interviewed at The Young Women's Leadership in Staten Island, and on June 13, 2022, he interviewed at the I.S. 281 Joseph B. Cavallaro school.

68.     On June 14, 2022, Plaintiff was interviewed at Origins High School.

69.     On June 22, 2022, Plaintiff was asked if he was interested in a Summer School position by Emily Phillips, the Assistant Principal of MS 915. Plaintiff responded that he needed to keep his time open to look for a math position.

70.     On June 23, 2022, Plaintiff interviewed at the Norman Thomas HS Campus with its Hiring Committee and Principal. The lengthy interview was followed by a 15 minute one-on-one interview with the Principal; however, Plaintiff never heard back from them.

71.     On June 23, 2022, Plaintiff participated in a virtual interview with West Brooklyn Community HS.

72.     On June 23, 2022, Plaintiff was contacted by Principal Haviland Zakariah from PS/IS 121 in Brooklyn, who asked if Plaintiff had any time that day or the next day to talk to him about the position. Plaintiff  replied he was available June 24th from 10AM – 12 PM. Mr. Zakariah did not respond.

73.     On June 28, 2022, Plaintiff had a virtual interview with Harvest Collegiate HS Committee.

74.     On June 30, 2022,  Plaintiff was interviewed at Aspirations Diploma Plus  School in Coney Island.

75.     On July 1, 2022, Plaintiff  participated in a Zoom Meeting with Pace HS.

76.     On July 7, 2022, Plaintiff had a virtual Interview with Brooklyn Frontiers and a phone interview with Assistant Principal Imani Matthews from the Brooklyn Collaborative School.

77.     On July 20, 2022, Plaintiff received a denial letter from AP Neil Pergament from the Brooklyn Frontiers School; however, the position remained open for over a month.

78.     On July 26, 2022, Plaintiff had an interview at Leadership and Public HS with AP Coury Velez.

79.     In June-July 2022, Plaintiff was in communication with Principal Jeffrey Chetirko at the Urban Assembly New York Harbor School.

80.     On June 27, 2022, after sending a tailored cover letter and resume via email, Plaintiff was contacted by Principal Chetirko within two days via email to arrange a time to speak with him over the phone. After speaking with Plaintiff on the phone, the principal invited him to the school for an interview. The interview went well, and the principal said, on at least two occasions, that he wanted Plaintiff to return to campus during the first week of summer school to perform a demo lesson that displayed what Plaintiff valued in his teaching. Plaintiff left the school

feeling like he had made a connection, and he started brainstorming for the demo lesson. Plaintiff sent the principal a Thank You email the evening of the interview where he alluded to the demo lesson performance by stating, "I look forward to returning to campus."

81.    After the first week of summer school, Plaintiff attached one part of his demo lesson created from the comments he heard at the school and emailed the principal on July 7, 2022, ten days after the interview, to remind him of his promise that Plaintiff was to perform a demo lesson. The principal did not respond. On July 13, 2022, 16 days after their interview, Plaintiff emailed all three parts of his demo lesson to the principal and reminded him of his promise to have Plaintiff return.  Finally, on July 14, 2022, 17 days after the interview, the principal emailed Plaintiff saying, "that after a long interview process, the Hiring Team decided to give the position to someone else."  He made no reference about his promise to have Plaintiff perform a demo lesson based on his suggestions.

82.    Plaintiff felt discriminated against because Principal Chetirko did not offer Plaintiff an equal opportunity to meet the Hiring Team, nor did he schedule a demo lesson that "displayed what [Plaintiff] valued as an educator."  Plaintiff felt discriminated against on several grounds: race, retaliation, age, disability, and not receiving equal treatment in the hiring process.

83.    On August 7, 2022, Plaintiff emailed a cover letter and resume to Eileen Barone, Principal of I.S. 27 Annie S. Prall. On Monday, August 8, 2022, Principal Barone emailed Plaintiff, asking if he was available for a Demo Lesson on Tuesday or Wednesday. Plaintiff responded that he was available anytime on Wednesday and asked her several questions pertaining to the demo lesson. He did not hear back from her on Monday, so he emailed her on Tuesday regarding Wednesday's demo lesson. He never heard back from her.  However, Plaintiff received an email on September 8, 2022, from a staff member offering him a substitute math position.

84.     On August 8, 2022, Plaintiff received an offer to interview at Aspirations Diploma Plus, from AP Matthew Hamilton and Principal Leong, for a math position he had already interviewed for on June 30, 2022. He received an email from AP Hamilton on July 6, 2022, stating they selected another candidate.

85.     On August 9, 2022 Plaintiff did a virtual interview with Kimberly Coleman from Urban Assembly School for Emergency Management. He also contacted Principal Bility several times after receiving his emails, but a second interview was never scheduled. To make matters worse, Principal Bility contacted Plaintiff three times in late August 2022 through mid-September 2022, offering Plaintiff an interview. An interview was never scheduled as Plaintiff was working at Murry Bergtraum High School that is co-located with Urban Assembly School for Emergency Management.

86.     Between August 22, 2002 and September 29, 2022, Plaintiff had a phone interview with Principal Joyell Simmons of Murry Bergtraum High School for approximately 40 minutes. She offered him the Math Vacancy position. Plaintiff said that he had attended many interviews, but no one was hiring him, and she said that she would look into that. She called Plaintiff and left a message for him to call her. When he called her, she mentioned that Plaintiff had a Resignation/Retirement Code, but not to worry about it. He agreed to meet at Murry Bergtraum High School on August 25, 2022. His interview lasted over an hour, but she made no mention of the Math Vacancy she offered him on August 22, 2022. At the end of the interview, Principal Simmons said she would call Plaintiff in approximately 5 days. Mr. Kevin Ortiz, who was present during the entire interview, walked Plaintiff out and said, "I hope she can hire you".

87.     On August 31, 2022, Principal Simmons called Plaintiff at 1:39 PM but did not leave a message. Plaintiff returned her call at 1:51 PM. She answered and told Plaintiff that she could only offer him a long-term substitute math position and that she needed to know right away.

Plaintiff was disappointed that she reneged on her original offer and reminded her that he completely qualified for the permanent Math position because he held NYS Professional Mathematics Certification (7-12) and no one else on her staff held his credentials. Plaintiff hesitantly accepted her offer because he passed up one offer from Richard R. Green HS for Teaching on August 24, 2022, and turned down a promising second interview with International HS at Lafayette solely based on Principal Simmons' initial offer of the Math Vacancy at Murry Bergtraum HS.

88.     On August 26, 2022, Plaintiff received an email at 8:32 AM from I.S. 49 Berta A. Dreyfus extending an interview offer for their Math Vacancy position. At 10:09 AM, Plaintiff received another email from I.S. 49 Berta A. Dreyfus stating, "Please disregard the previous email. It was sent in error. Thank you".

89.     Between September 1, 2022 and October 15, 2022, Plaintiff had difficulties encountered with Onboarding at Murry Bergtraum High School. Once Principal Simmons had her secretary inform Plaintiff that she rescinded her long-term offer, he immediately asked to have his Substitute Teacher Application withdrawn on October 1, 2022, prior to its approval. Principal Simmons reneged on her initial offer to give Plaintiff the math vacancy, and then she reneged on the long-term Substitute Math position she offered him. Plaintiff did not agree to be a day-to-day Substitute Teacher without benefits. Plaintiff told her during their initial phone conversation that he had a long-term illness that was in remission.

90.     Between September 6, 2022 and September 13, 2022, Plaintiff worked at Murry Bergtraum HS, when AP Ms. Kidda told him on September 13, 2022 that he should not return until he was on payroll. By this point, Plaintiff worked 6 days at Bergtraum HS.

91.     Between October 7, 2022 to present, Plaintiff's disability symptoms have significantly worsened as a result of his treatment by Principal Simmons. Plaintiff was in

remission of symptoms that he worked hard to achieve since 2012, and her multiple discriminatory acts towards him negatively impacted his health.

92.     On October 12, 2022, Principal Simmons sent Plaintiff an Overnight envelope containing a non-payroll check for $950.

93.     On or about October 28, 2022, Plaintiff became aware of the manner in which the NYCDOE unlawfully blocks people for no reason who resign or take a leave. Plaintiff resigned from the NYCDOE due to illness in 2009. At that time Plaintiff filed a disability discrimination complaint against the NYCDOE for targeting him with harassment solely due to his disability.

94.     The 'Problem Code' at the NYCDOE Human Resources' Office of Personnel Investigations is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore, the NYCDOE has considered Plaintiff guilty of some kind of misconduct without giving him a chance to clear his name and have a hearing on the matter, or not telling him when or why he is in this database before putting his fingerprints into a database which blocks him from obtaining full-time, permanent employment with the NYCDOE.

## FACTUAL ALLEGATIONS (SUMMARY)

95.     Plaintiff has been diagnosed with a psychiatric disability, which substantially limits one or more of Plaintiff's major life activities. Despite Plaintiff's repeated requests, Defendants failed to provide reasonable accommodations, in violation of the ADA and ADAAA.

96.     Plaintiff was subjected to continuous discrimination, retaliation, and harassment due to Plaintiff's disability, age, and race, creating a hostile work environment that exacerbated Plaintiff's psychiatric condition.

97.    The imposition of a Problem Code on Plaintiff's Personnel File without Plaintiff's knowledge constitutes further discrimination and retaliation, adversely affecting Plaintiff's employment and future employment opportunities.

## ROLE OF FORENSIC PSYCHIATRIST

98.    A Forensic Psychiatrist has been retained to evaluate Plaintiff and can provide expert testimony regarding the nature and extent of Plaintiff's psychiatric disability, the impact of the hostile work environment on Plaintiff's condition, and the causal link between the discriminatory practices and Plaintiff's psychiatric harm. This expert testimony is pivotal in establishing the medical basis for the Plaintiff's claims, demonstrating the severity of the psychiatric condition, and linking the workplace environment to the exacerbation of the plaintiff's condition.

99.    On December 13, 2022, Plaintiff filed a verified notice of claim against Defendants. A copy of the notice of claim is annexed as Exhibit A.

100.    On June 23, 2023, Plaintiff filed an EEOC charge alleging discrimination and retaliation based on age, color, and disability relating, *inter alia,* to his experiences at Urban Assembly New York Harbor School and Murry Bergtraum High School. A copy of the EEOC charge is annexed as Exhibit B.

101.    On or about May 9, 2024, Plaintiff received a right to sue letter from the EEOC, annexed as Exhibit C.

**FIRST CLAIM FOR RELIEF**
**Violation of the ADA and ADAA (Disability Discrimination and Failure to**
**Accommodate)**
**(against Defendant DOE)**

102.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

103.    Defendants, through the aforementioned conduct, have violated the Americans with Disabilities Act (ADA), Rehabilitation Act, and Age Discrimination in Employment Act (ADEA), by, *inter alia*, failing to be hired for positions based on his age and disability, interfered with his return to work based on his age and disability, and being retaliated against based on filing protected complaints of discrimination.

**SECOND CLAIM FOR RELIEF**
**Violation of Title VII and NYSHRL (Retaliation, Harassment, and Hostile Work**
**Environment)**
**(against all Defendants)**

104.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

105.    Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, and the New York City Human Rights Law, by, *inter alia*, failing to be hired for positions based on his age, and disability, interfered with his return to work based on his age and disability, and being retaliated against based on filing protected complaints of discrimination.

**THIRD CLAIM FOR RELIEF**
**Violation of NYCHRL (Discrimination due to Disability, Age, and Race**
**(against all Defendants)**

106.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

107.    Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, and the New York City Human Rights Law, by, *inter alia*, failing to be hired for positions based on his age, and disability, interfered with his return to work based on his age and disability, and being retaliated against based on filing protected complaints of discrimination.

**FOURTH CLAIM FOR RELIEF**
**Breach of Union Contract and Failure to Protect Contractual Rights**
**(against all Defendants)**

108.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

109.    Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, and the New York City Human Rights Law, by, *inter alia*, failing to be hired for positions based on his age, and disability, interfered with his return to work based on his age and disability, and being retaliated against based on filing protected complaints of discrimination.

**FIFTH CLAIM FOR RELIEF**
**Promissory Estoppel**
**(against all Defendants)**

110.    Plaintiff repeats and realleges all the preceding paragraphs of this complaint, as if fully set forth herein.

111.    Defendants, through the aforementioned conduct, have violated the New York State Human Rights Law, and the New York City Human Rights Law, by, *inter alia*, failing to be hired

for positions based on his age, and disability, interfered with his return to work based on his age
and disability, and being retaliated against based on filing protected complaints of discrimination.

## JURY DEMAND

Plaintiff demands a trial by jury on all of the triable issues of this complaint

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for declaratory relief and damages as follows

A. A declaratory judgment that Defendants violated ADA;

B. A declaratory judgment that Defendants violated the Rehabilitation Act;

C. A declaratory judgment that Defendants violated the ADEA;

D. A declaratory judgment that Defendants violated the New York State
Human Rights Law;

E. A declaratory judgment that Defendants violated the New York City Human
Rights Law;

F. Awarding Plaintiff compensatory damages (including but not limited to
emotional distress damages and damages accruing as a result of numerous
lost employment opportunities) and punitive damages (to the extent
available) pursuant to the ADA, Rehabilitation Act, ADEA, NYSHRL, an
NYCHRL;

G. Awarding Plaintiff costs, fees, and expenses, and

H. Awarding such other and further relief as this Court may deem just and
proper

Dated:          Staten Island, New York
                August 8,  2024

                                                    By:      s/Fernando Nieves Jr.
                                                             FERNANDONIEVES
                                                             Plaintiff *pro se*
                                                    257 Seaview Ave
                                                    Staten Island, NY 10305
                                                    (718) 646-7469
                                                    fnieves987@gmail.com

## NOTICE OF CLAIM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### FERNANDO NIEVES
**Claimant,**

### - against -

### CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION,
**Defendants**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To:  Office of the City Comptroller
     Bureau of Law and Adjustment
     1 Centre Street, Room 1225
     New York, New York 10007

     Hon. Sylvia O. Hinds-Radix
     Corporation Counsel
     New York City Law Department
     100 Church Street
     New York, New York 10007

     New York City Department of Education
     52 Chambers Street
     New York, N.Y. 10007

**PLEASE TAKE NOTICE** that the Claimant hereby makes claim and demand against the individuals and groups named in the caption above:

1) **The name, post office address, and phone number of claimant:**

   Fernando Nieves
   257 Seaview Avenue
   Staten Island, NY 10305
   (917) 636-3394

2) **The nature of the claim:**


Claimant has multiple valid and timely claims of age and disability discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990 (ADA): 29 U.S.C. 621 et. seq., the Age Discrimination in Employment Act (ADEA): 42 U.S.C. 12112 et seq., Sections 501 and 504 of

1

the Rehabilitation Act of 1973, 29 U.S.C. 791 et seq., and the New York State Human Rights Law ("HYSHRL"), N.Y. Executive Law 296 et. seq.

Claimant has been defamed and stigmatized by a Problem Code on his fingerprints, placed there by the Defendants without his knowledge or consent. He has done nothing wrong that could be construed as "misconduct", and thus has been harmed by Defendants' actions.

This claim seeks recovery for monetary damages for the harm caused to Claimant's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish and impairment of Claimant's ability to secure future employment, and impairment of earning power inflicted upon the Claimant due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants. Claimant's rights under the Constitution, Americans With Disabilities Act both Federal and State, City and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE. Claimant now seeks to be made whole.

### 3)  **The time when, the place where, and the manner in which the claim arose**

In 2005 Claimant was targeted by administrators at the New York City Department of Education solely because of his disabling illness for which he was getting counseling and treatment. Claimant took an unpaid leave to restore his health.

Claimant filed a disability discrimination charge against the NYC DOE, and in 2008 a judge declared Claimant "disabled". The principal sent Claimant an adversarial letter bringing him up on charges related to school rules. This made Claimant ill, and he felt intimidated and harassed so he resigned under duress in September 2009.

In 2022 Claimant was fit to work again after extensive counseling and medical intervention. He sent his resume out to positions open for a math teacher, for which he is qualified.

On 04/26/2022 Claimant completed the NYC Online Teacher Application.

On 05/23/2022 Claimant was accepted to the New Teacher Finder Candidate Network.

On 06/06/2022 Claimant was interviewed at Manhattan Comprehensive Night and Day High School for a Night Position.

On 06/08/2022 Claimant was interviewed at The Young Women's Leadership in Staten Island, and on 06/13/2022 he interviewed at I.S. 281 Joseph B. Cavallaro.

On 06/14/2022 Claimant went to an interview at Origins High School.

2

On 06/22/2022 Claimant was asked if he was interested in a Summer School position by Emily Phillips, AP of MS 915. Claimant responded that he needed to keep his time open to look for a math position.

On 06/23/2022 Claimant interviewed at Norman Thomas HS Campus with their Hiring Committee and Principal. The lengthy interview was followed by a 15 minute one-on-one interview with the Principal, however Claimant never heard back from them.

On 06/23/2022 Claimant participated in a virtual interview with West Brooklyn Community HS.

On 06/23/2022 Claimant was contacted by Haviland Zakariah, who asked if Claimant had any time that day or the next day to talk to him about the position? Claimant replied I was available June 24th from 10AM – 12 PM. He did not respond.

On 06/28/2022 Claimant had a virtual interview with Harvest Collegiate HS Committee.

On 06/30/2022 Claimant was interviewed at Aspirations Diploma Plus (Coney Island).

On 07/01/2022 Claimant participated in a Zoom Meeting with Pace HS.

On 07/07/2022 Claimant had a virtual Interview with Brooklyn Frontiers and a phone interview with Imani Matthews from Brooklyn Collaborative.

On 07/20/2022 Claimant received a denial letter from AP Neil Pergament from Brooklyn Frontiers; however, the position remained open for over a month.

On 07/26/2022 Claimant had an interview at Leadership and Public HS with AP Coury Velez.

In June-July 2022 Claimant was in communication with Principal Jeffrey Chetirko at the Urban Assembly New York Harbor School. On June 27, 2022, after sending a tailored cover letter and resume via email, Claimant was contacted by Principal Chetirko within two days via email to arrange a time to speak with him over the phone. After speaking with Claimant on the phone, the principal invited him to the school for an interview. The interview went well and the principal said, on at least 2 occasions, that he wanted Claimant to return to campus during the first week of summer school to perform a demo lesson that displayed what Claimant valued in his teaching. Claimant left the school feeling like he had made a connection and he started brainstorming for the demo lesson. Claimant sent the principal a Thank You email the evening of the interview where he alluded to the demo lesson performance by stating, "I look forward to returning to campus."

After the first week of summer school, Claimant attached one part of his demo lesson created from the comments he heard at the school and emailed the principal on July 7th, ten days after the interview, to remind him of his promise that Claimant was to perform a demo lesson. The principal did not respond. On July 13th, 16 days after their interview, Claimant emailed all 3 parts of his demo lesson to the principal and reminded him of his promise to have Claimant return. Finally, on July 14th, 17 days after the interview, the principal emailed Claimant saying

3

"that after a long interview process, the Hiring Team decided to give the position to someone else." He made no reference about his promise to have Claimant perform a demo lesson based on his suggestions.

Claimant felt discriminated against because Principal Chetirko did not offer Claimant an opportunity to meet the Hiring Team nor did he schedule a demo lesson that "displayed what [Claimant] valued as an educator." Claimant felt discriminated against on several levels: race, retaliation, age, disability, and not receiving equal treatment in the hiring process.

On 08/07/2022 Claimant emailed a cover letter and resume to Eileen Barone, Principal of I.S. 27 Annie S. Prall. On Monday, 08/08/2022, Principal Barone emailed Claimant, asking if he was available for a Demo Lesson on Tuesday or Wednesday. Claimant responded that he was available anytime on Wednesday and asked her several questions pertaining to the demo lesson. He did not hear back from her on Monday, so he emailed her on Tuesday regarding Wednesday's demo lesson. He never heard back from her. However, Claimant received an email on 9/8 from a staff member offering him a substitute math position.

On 08/08/2022 Claimant received an offer to interview at Aspirations Diploma Plus, from AP Matthew Hamilton and Principal Leong, for a math position he had already interviewed for on 06/30/2022. He received an email from AP Hamilton on July 6th, 2022, stating they selected another candidate.

On 08/09/2022 Claimant did a virtual interview with Kimberly Coleman from Urban Assembly School for Emergency Management. He also contacted Principal Bility several times after receiving his emails, but a second interview was never scheduled. To make matters worse, Claimant was working at Murry Bergtraum HS that is co-located with Urban Assembly School for Emergency Management.

08/22/2022-09/29/2022 Claimant had a phone interview with Principal Joyell Simmons of Murry Bergtraum HS for approximately 40 minutes. She offered him the Math Vacancy. Claimant said that he had been on many interviews but no one was hiring him, and she said that she would look into that. She called Claimant and left a message for him to call her. When he called her, she mentioned that Claimant had a Resignation/Retirement Code, but not to worry about it. He agreed to meet at Murry Bergtraum High School on August 25th, 2022. His interview lasted over an hour, but she made no mention of the Math Vacancy she offered him on 08/22/2022. At the end of the interview, Joyell Simmons said she would call Claimant in approximately 5 days. Mr. Kevin Brown, who was present during the entire interview, walked Claimant out and said, "I hope she can hire you."

On August 31st, 2022, Joyell Simmons called Claimant at 1:39 PM but did not leave a message. Claimant returned her call at 1:51 PM. She answered and told Claimant that she could only offer him a long-term substitute math position and that she needed to know right away. Claimant was disappointed that she reneged on her original offer and reminded her that he completely qualified for the permanent Math position because he held NYS Professional Mathematics Certification

4

(7-12) and no one else on her staff held his credentials. Claimant hesitantly accepted her offer because he passed up one offer from Richard R. Green HS for Teaching on 08/24/2022 and turned down a promising 3rd interview with International HS at Lafayette solely based of Joyell Simmons' initial offer of the Math Vacancy at Murry Bergtraum HS.

On 08/26/2022 Claimant received an email at 8:32 AM from I.S. 49 Berta A. Dreyfus extending an interview offer for their Math Vacancy. At 10:09 AM, Claimant received another email from I.S. 49 Berta A. Dreyfus stating, "Please disregard the previous email. It was sent in error. Thank you."

09/01/2022-10/15/2022: Difficulties encountered with Onboarding. Once Joyell Simmons had her secretary inform Claimant that she rescinded her long-term offer, he immediately asked to have his Substitute Teacher Application withdrawn on October 1, 2022, prior to its approval. Joyell Simmons reneged on her initial offer to Claimant the math vacancy, and then she reneged on the long-term Substitute Math position she offered him. Claimant did not agree to be a day-to-day Substitute Teacher without benefits. He told her during their initial phone conversation that he had a long-term illness that was in remission.

09/06/2022-09/13/2022 Claimant worked 09/06/2022 at Murry Bergtraum HS, until

09/13/2022, when AP, Ms. Kidda told him that he should not return until he was on payroll. By this point, Claimant worked 6 days.

10/07/2022-December 12 Claimant's disability symptoms have significantly worsened as a result of his treatment by Joyell Simmons. Claimant was in remission of symptoms that he worked hard to achieve since 2012, and her multiple discriminatory acts towards him negatively impacted his health.

On 10/12/2022 Joyell Simmons sent Claimant an Over-Night envelope containing a non-payroll check for $950.

On or about October 28, 2022 Claimant became aware of the manner in which the New York City Department of Education unlawfully blocks people for no reason who resign or take a leave. Claimant resigned from the NYC DOE due to illness in 2009. At that time Claimant filed a disability discrimination charge against the NYC DOE for targeting him with harassment solely due to his disability.

The 'Problem Code' at the NYC DOE Human Resources' Office of Personnel Investigations is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore the New York City Department of Education has considered Claimant guilty of some kind of misconduct without giving him a chance to clear his name and have a hearing on the matter, or not telling him when or why he is in this database before putting his fingerprints into a database which blocks him from obtaining full-time, permanent

5

employment with the NYC DOE. This is age and disability discrimination, and a filing with the EEOC has been filed.

4) **The items of damage or injuries claimed are**:

damages to reputation; emotional distress; impairment of Claimant's ability to secure future employment; impairment of earning power; tortious interference with business relations; malicious prosecution; abuse of process; fraud; and retaliation, defamation, libel and slander.

The items of damage or injuries claimed amount to $2 million dollars.

The claim and demand is hereby presented for adjustment and payment.

PLEASE TAKE FURTHER NOTICE that by reason of the foregoing, in default of the City of New York and the listed Defendants to pay the Claimant within the time limited for compliance with this demand by the applicable statutes, Claimant intends to commence an action against the City of New York and the listed Defendants to recover damages with interest and costs.

Dated: 12-13-22

Fernando Nieves

Sworn or Affirmed before me on
The 13th day of December 2022

Notary Public _Patricia Urbanski_

PATRICE G URBANSKI
Notary Public, State of New York
No. 01UR5062274
Qualified in Richmond County
Commission Expires June 24, 20___

6

## NOTICE OF CLAIM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### FERNANDO NIEVES
#### Claimant,

- against -

### CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION,
#### Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To: Office of the City Comptroller
Bureau of Law and Adjustment
1 Centre Street, Room 1225
New York, New York 10007

Hon. Sylvia O. Hinds-Radix
Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

New York City Department of Education
52 Chambers Street
New York, N.Y. 10007

**PLEASE TAKE NOTICE** that the Claimant hereby makes claim and demand against the individuals and groups named in the caption above:

1) **The name, post office address, and phone number of claimant:**

Fernando Nieves
257 Seaview Avenue
Staten Island, NY 10305
(917) 636-3394

2) **The nature of the claim:**

Claimant has multiple valid and timely claims of age and disability discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990 (ADA): 29 U.S.C. 621 et. seq., the Age Discrimination in Employment Act (ADEA): 42 U.S.C. 12112 et seq., Sections 501 and 504 of

1

the Rehabilitation Act of 1973, 29 U.S.C. 791 et seq., and the New York State Human Rights Law ("HYSHRL"), N.Y. Executive Law 296 et. seq.

Claimant has been defamed and stigmatized by a Problem Code on his fingerprints, placed there by the Defendants without his knowledge or consent. He has done nothing wrong that could be construed as "misconduct", and thus has been harmed by Defendants' actions.

This claim seeks recovery for monetary damages for the harm caused to Claimant's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish and impairment of Claimant's ability to secure future employment, and impairment of earning power inflicted upon the Claimant due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants. Claimant's rights under the Constitution, Americans With Disabilities Act both Federal and State, City and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE. Claimant now seeks to be made whole.

### 3) **The time when, the place where, and the manner in which the claim arose**

In 2005 Claimant was targeted by administrators at the New York City Department of Education solely because of his disabling illness for which he was getting counseling and treatment. Claimant took an unpaid leave to restore his health.

Claimant filed a disability discrimination charge against the NYC DOE, and in 2008 a judge declared Claimant "disabled". The principal sent Claimant an adversarial letter bringing him up on charges related to school rules. This made Claimant ill, and he felt intimidated and harassed so he resigned under duress in September 2009.

In 2022 Claimant was fit to work again after extensive counseling and medical intervention. He sent his resume out to positions open for a math teacher, for which he is qualified.

On 04/26/2022 Claimant completed the NYC Online Teacher Application.

On 05/23/2022 Claimant was accepted to the New Teacher Finder Candidate Network.

On 06/06/2022 Claimant was interviewed at Manhattan Comprehensive Night and Day High School for a Night Position.

On 06/08/2022 Claimant was interviewed at The Young Women's Leadership in Staten Island, and on 06/13/2022 he interviewed at I.S. 281 Joseph B. Cavallaro.

On 06/14/2022 Claimant went to an interview at Origins High School.

2

On 06/22/2022 Claimant was asked if he was interested in a Summer School position by Emily Phillips, AP of MS 915. Claimant responded that he needed to keep his time open to look for a math position.

On 06/23/2022 Claimant interviewed at Norman Thomas HS Campus with their Hiring Committee and Principal. The lengthy interview was followed by a 15 minute one-on-one interview with the Principal, however Claimant never heard back from them.

On 06/23/2022 Claimant participated in a virtual interview with West Brooklyn Community HS.

On 06/23/2022 Claimant was contacted by Haviland Zakariah, who asked if Claimant had any time that day or the next day to talk to him about the position? Claimant replied I was available June 24th from 10AM – 12 PM. He did not respond.

On 06/28/2022 Claimant had a virtual interview with Harvest Collegiate HS Committee.

On 06/30/2022 Claimant was interviewed at Aspirations Diploma Plus (Coney Island).

On 07/01/2022 Claimant participated in a Zoom Meeting with Pace HS.

On 07/07/2022 Claimant had a virtual Interview with Brooklyn Frontiers and a phone interview with Imani Matthews from Brooklyn Collaborative.

On 07/20/2022 Claimant received a denial letter from AP Neil Pergament from Brooklyn Frontiers; however, the position remained open for over a month.

On 07/26/2022 Claimant had an interview at Leadership and Public HS with AP Coury Velez.

In June-July 2022 Claimant was in communication with Principal Jeffrey Chetirko at the Urban Assembly New York Harbor School. On June 27, 2022, after sending a tailored cover letter and resume via email, Claimant was contacted by Principal Chetirko within two days via email to arrange a time to speak with him over the phone. After speaking with Claimant on the phone, the principal invited him to the school for an interview. The interview went well and the principal said, on at least 2 occasions, that he wanted Claimant to return to campus during the first week of summer school to perform a demo lesson that displayed what Claimant valued in his teaching. Claimant left the school feeling like he had made a connection and he started brainstorming for the demo lesson. Claimant sent the principal a Thank You email the evening of the interview where he alluded to the demo lesson performance by stating, "I look forward to returning to campus."

After the first week of summer school, Claimant attached one part of his demo lesson created from the comments he heard at the school and emailed the principal on July 7th, ten days after the interview, to remind him of his promise that Claimant was to perform a demo lesson. The principal did not respond. On July 13th, 16 days after their interview, Claimant emailed all 3 parts of his demo lesson to the principal and reminded him of his promise to have Claimant return. Finally, on July 14th, 17 days after the interview, the principal emailed Claimant saying

3

"that after a long interview process, the Hiring Team decided to give the position to someone else." He made no reference about his promise to have Claimant perform a demo lesson based on his suggestions.

Claimant felt discriminated against because Principal Chetirko did not offer Claimant an opportunity to meet the Hiring Team nor did he schedule a demo lesson that "displayed what [Claimant] valued as an educator." Claimant felt discriminated against on several levels: race, retaliation, age, disability, and not receiving equal treatment in the hiring process.

On 08/07/2022 Claimant emailed a cover letter and resume to Eileen Barone, Principal of I.S. 27 Annie S. Prall. On Monday, 08/08/2022, Principal Barone emailed Claimant, asking if he was available for a Demo Lesson on Tuesday or Wednesday. Claimant responded that he was available anytime on Wednesday and asked her several questions pertaining to the demo lesson. He did not hear back from her on Monday, so he emailed her on Tuesday regarding Wednesday's demo lesson. He never heard back from her. However, Claimant received an email on 9/8 from a staff member offering him a substitute math position.

On 08/08/2022 Claimant received an offer to interview at Aspirations Diploma Plus, from AP Matthew Hamilton and Principal Leong, for a math position he had already interviewed for on 06/30/2022. He received an email from AP Hamilton on July 6th, 2022, stating they selected another candidate.

On 08/09/2022 Claimant did a virtual interview with Kimberly Coleman from Urban Assembly School for Emergency Management. He also contacted Principal Bility several times after receiving his emails, but a second interview was never scheduled. To make matters worse, Claimant was working at Murry Bergtraum HS that is co-located with Urban Assembly School for Emergency Management.

08/22/2022-09/29/2022 Claimant had a phone interview with Principal Joyell Simmons of Murry Bergtraum HS for approximately 40 minutes. She offered him the Math Vacancy. Claimant said that he had been on many interviews but no one was hiring him, and she said that she would look into that. She called Claimant and left a message for him to call her. When he called her, she mentioned that Claimant had a Resignation/Retirement Code, but not to worry about it. He agreed to meet at Murry Bergtraum High School on August 25th, 2022. His interview lasted over an hour, but she made no mention of the Math Vacancy she offered him on 08/22/2022. At the end of the interview, Joyell Simmons said she would call Claimant in approximately 5 days. Mr. Kevin Brown, who was present during the entire interview, walked Claimant out and said, "I hope she can hire you."

On August 31st, 2022, Joyell Simmons called Claimant at 1:39 PM but did not leave a message. Claimant returned her call at 1:51 PM. She answered and told Claimant that she could only offer him a long-term substitute math position and that she needed to know right away. Claimant was disappointed that she reneged on her original offer and reminded her that he completely qualified for the permanent Math position because he held NYS Professional Mathematics Certification

4

(7-12) and no one else on her staff held his credentials. Claimant hesitantly accepted her offer because he passed up one offer from Richard R. Green HS for Teaching on 08/24/2022 and turned down a promising 3rd interview with International HS at Lafayette solely based of Joyell Simmons' initial offer of the Math Vacancy at Murry Bergtraum HS.

On 08/26/2022 Claimant received an email at 8:32 AM from I.S. 49 Berta A. Dreyfus extending an interview offer for their Math Vacancy. At 10:09 AM, Claimant received another email from I.S. 49 Berta A. Dreyfus stating, "Please disregard the previous email. It was sent in error. Thank you."

09/01/2022-10/15/2022: Difficulties encountered with Onboarding. Once Joyell Simmons had her secretary inform Claimant that she rescinded her long-term offer, he immediately asked to have his Substitute Teacher Application withdrawn on October 1, 2022, prior to its approval. Joyell Simmons reneged on her initial offer to Claimant the math vacancy, and then she reneged on the long-term Substitute Math position she offered him. Claimant did not agree to be a day-to-day Substitute Teacher without benefits. He told her during their initial phone conversation that he had a long-term illness that was in remission.

09/06/2022-09/13/2022 Claimant worked 09/06/2022 at Murry Bergtraum HS, until

09/13/2022, when AP, Ms. Kidda told him that he should not return until he was on payroll. By this point, Claimant worked 6 days.

10/07/2022-December 12 Claimant's disability symptoms have significantly worsened as a result of his treatment by Joyell Simmons. Claimant was in remission of symptoms that he worked hard to achieve since 2012, and her multiple discriminatory acts towards him negatively impacted his health.

On 10/12/2022 Joyell Simmons sent Claimant an Over-Night envelope containing a non-payroll check for $950.

On or about October 28, 2022 Claimant became aware of the manner in which the New York City Department of Education unlawfully blocks people for no reason who resign or take a leave. Claimant resigned from the NYC DOE due to illness in 2009. At that time Claimant filed a disability discrimination charge against the NYC DOE for targeting him with harassment solely due to his disability.

The 'Problem Code' at the NYC DOE Human Resources' Office of Personnel Investigations is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore the New York City Department of Education has considered Claimant guilty of some kind of misconduct without giving him a chance to clear his name and have a hearing on the matter, or not telling him when or why he is in this database before putting his fingerprints into a database which blocks him from obtaining full-time, permanent

employment with the NYC DOE. This is age and disability discrimination, and a filing with the EEOC has been filed.

### 4) **The items of damage or injuries claimed are**:

damages to reputation; emotional distress; impairment of Claimant's ability to secure future employment; impairment of earning power; tortious interference with business relations; malicious prosecution; abuse of process; fraud; and retaliation, defamation, libel and slander.

The items of damage or injuries claimed amount to $2 million dollars.

The claim and demand is hereby presented for adjustment and payment.

PLEASE TAKE FURTHER NOTICE that by reason of the foregoing, in default of the City of New York and the listed Defendants to pay the Claimant within the time limited for compliance with this demand by the applicable statutes, Claimant intends to commence an action against the City of New York and the listed Defendants to recover damages with interest and costs.

Dated: 12-13-22

Fernando Nieves

Sworn or Affirmed before me on
The 13 day of December 2022

Notary Public _Patrice A Urbanski_

PATRICE G URBANSKI
Notary Public, State of New York
No. 01UR5062274
Qualified in Richmond County
Commission Expires June 24, 20 26

## NOTICE OF CLAIM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### FERNANDO NIEVES
**Claimant,**

**- against -**

### CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION,
**Defendants**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

To:  Office of the City Comptroller
Bureau of Law and Adjustment
1 Centre Street, Room 1225
New York, New York 10007

Hon. Sylvia O. Hinds-Radix
Corporation Counsel
New York City Law Department
100 Church Street
New York, New York 10007

New York City Department of Education
52 Chambers Street
New York, N.Y. 10007

**PLEASE TAKE NOTICE** that the Claimant hereby makes claim and demand against the individuals and groups named in the caption above:

1) **The name, post office address, and phone number of claimant:**

Fernando Nieves
257 Seaview Avenue
Staten Island, NY 10305
(917) 636-3394

2) **The nature of the claim:**

Claimant has multiple valid and timely claims of age and disability discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990 (ADA): 29 U.S.C. 621 et. seq., the Age Discrimination in Employment Act (ADEA): 42 U.S.C. 12112 et seq., Sections 501 and 504 of

1

the Rehabilitation Act of 1973, 29 U.S.C. 791 et seq., and the New York State Human Rights Law ("HYSHRL"), N.Y. Executive Law 296 et. seq.

Claimant has been defamed and stigmatized by a Problem Code on his fingerprints, placed there by the Defendants without his knowledge or consent. He has done nothing wrong that could be construed as "misconduct", and thus has been harmed by Defendants' actions.

This claim seeks recovery for monetary damages for the harm caused to Claimant's reputation, livelihood, and career; additionally for the distress, suffering, mental, emotional, and physical anguish and impairment of Claimant's ability to secure future employment, and impairment of earning power inflicted upon the Claimant due to the negligence, carelessness, recklessness, and misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Defendants. Claimant's rights under the Constitution, Americans With Disabilities Act both Federal and State, City and State Human Rights Laws, NYS Administrative Code, as well as employment rights under the Collective Bargaining Agreements between the UFT and the DOE. Claimant now seeks to be made whole.

### 3)  The time when, the place where, and the manner in which the claim arose

In 2005 Claimant was targeted by administrators at the New York City Department of Education solely because of his disabling illness for which he was getting counseling and treatment. Claimant took an unpaid leave to restore his health.

Claimant filed a disability discrimination charge against the NYC DOE, and in 2008 a judge declared Claimant "disabled".  The principal sent Claimant an adversarial letter bringing him up on charges related to school rules. This made Claimant ill, and he felt intimidated and harassed so he resigned under duress in September 2009.

In 2022 Claimant was fit to work again after extensive counseling and medical intervention. He sent his resume out to positions open for a math teacher, for which he is qualified.

 On 04/26/2022 Claimant completed the NYC Online Teacher Application.

On 05/23/2022 Claimant was accepted to the New Teacher Finder Candidate Network.

On 06/06/2022 Claimant was interviewed at Manhattan Comprehensive Night and Day High School for a Night Position.

On 06/08/2022 Claimant was interviewed at The Young Women's Leadership in Staten Island, and on 06/13/2022 he interviewed at I.S. 281 Joseph B. Cavallaro.

On 06/14/2022 Claimant went to an interview at Origins High School.

2

On 06/22/2022 Claimant was asked if he was interested in a Summer School position by Emily Phillips, AP of MS 915. Claimant responded that he needed to keep his time open to look for a math position.

On 06/23/2022 Claimant interviewed at Norman Thomas HS Campus with their Hiring Committee and Principal. The lengthy interview was followed by a 15 minute one-on-one interview with the Principal, however Claimant never heard back from them.

On 06/23/2022 Claimant participated in a virtual interview with West Brooklyn Community HS.

On 06/23/2022 Claimant was contacted by Haviland Zakariah, who asked if Claimant had any time that day or the next day to talk to him about the position? Claimant replied I was available June 24th from 10AM – 12 PM. He did not respond.

On 06/28/2022 Claimant had a virtual interview with Harvest Collegiate HS Committee.

On 06/30/2022 Claimant was interviewed at Aspirations Diploma Plus (Coney Island).

On 07/01/2022 Claimant participated in a Zoom Meeting with Pace HS.

On 07/07/2022 Claimant had a virtual Interview with Brooklyn Frontiers and a phone interview with Imani Matthews from Brooklyn Collaborative.

On 07/20/2022 Claimant received a denial letter from AP Neil Pergament from Brooklyn Frontiers; however, the position remained open for over a month.

On 07/26/2022 Claimant had an interview at Leadership and Public HS with AP Coury Velez.

In June-July 2022 Claimant was in communication with Principal Jeffrey Chetirko at the Urban Assembly New York Harbor School. On June 27, 2022, after sending a tailored cover letter and resume via email, Claimant was contacted by Principal Chetirko within two days via email to arrange a time to speak with him over the phone. After speaking with Claimant on the phone, the principal invited him to the school for an interview. The interview went well and the principal said, on at least 2 occasions, that he wanted Claimant to return to campus during the first week of summer school to perform a demo lesson that displayed what Claimant valued in his teaching. Claimant left the school feeling like he had made a connection and he started brainstorming for the demo lesson. Claimant sent the principal a Thank You email the evening of the interview where he alluded to the demo lesson performance by stating, "I look forward to returning to campus."

After the first week of summer school, Claimant attached one part of his demo lesson created from the comments he heard at the school and emailed the principal on July 7th, ten days after the interview, to remind him of his promise that Claimant was to perform a demo lesson. The principal did not respond. On July 13th, 16 days after their interview, Claimant emailed all 3 parts of his demo lesson to the principal and reminded him of his promise to have Claimant return. Finally, on July 14th, 17 days after the interview, the principal emailed Claimant saying

3

"that after a long interview process, the Hiring Team decided to give the position to someone else." He made no reference about his promise to have Claimant perform a demo lesson based on his suggestions.

Claimant felt discriminated against because Principal Chetirko did not offer Claimant an opportunity to meet the Hiring Team nor did he schedule a demo lesson that "displayed what [Claimant] valued as an educator." Claimant felt discriminated against on several levels: race, retaliation, age, disability, and not receiving equal treatment in the hiring process.

On 08/07/2022 Claimant emailed a cover letter and resume to Eileen Barone, Principal of I.S. 27 Annie S. Prall. On Monday, 08/08/2022, Principal Barone emailed Claimant, asking if he was available for a Demo Lesson on Tuesday or Wednesday. Claimant responded that he was available anytime on Wednesday and asked her several questions pertaining to the demo lesson. He did not hear back from her on Monday, so he emailed her on Tuesday regarding Wednesday's demo lesson. He never heard back from her. However, Claimant received an email on 9/8 from a staff member offering him a substitute math position.

On 08/08/2022 Claimant received an offer to interview at Aspirations Diploma Plus, from AP Matthew Hamilton and Principal Leong, for a math position he had already interviewed for on 06/30/2022. He received an email from AP Hamilton on July 6th, 2022, stating they selected another candidate.

On 08/09/2022 Claimant did a virtual interview with Kimberly Coleman from Urban Assembly School for Emergency Management. He also contacted Principal Bility several times after receiving his emails, but a second interview was never scheduled. To make matters worse, Claimant was working at Murry Bergtraum HS that is co-located with Urban Assembly School for Emergency Management.

08/22/2022-09/29/2022 Claimant had a phone interview with Principal Joyell Simmons of Murry Bergtraum HS for approximately 40 minutes. She offered him the Math Vacancy. Claimant said that he had been on many interviews but no one was hiring him, and she said that she would look into that. She called Claimant and left a message for him to call her. When he called her, she mentioned that Claimant had a Resignation/Retirement Code, but not to worry about it. He agreed to meet at Murry Bergtraum High School on August 25th, 2022. His interview lasted over an hour, but she made no mention of the Math Vacancy she offered him on 08/22/2022. At the end of the interview, Joyell Simmons said she would call Claimant in approximately 5 days. Mr. Kevin Brown, who was present during the entire interview, walked Claimant out and said, "I hope she can hire you."

On August 31st, 2022, Joyell Simmons called Claimant at 1:39 PM but did not leave a message. Claimant returned her call at 1:51 PM. She answered and told Claimant that she could only offer him a long-term substitute math position and that she needed to know right away. Claimant was disappointed that she reneged on her original offer and reminded her that he completely qualified for the permanent Math position because he held NYS Professional Mathematics Certification

4

(7-12) and no one else on her staff held his credentials. Claimant hesitantly accepted her offer because he passed up one offer from Richard R. Green HS for Teaching on 08/24/2022 and turned down a promising 3rd interview with International HS at Lafayette solely based of Joyell Simmons' initial offer of the Math Vacancy at Murry Bergtraum HS.

On 08/26/2022 Claimant received an email at 8:32 AM from I.S. 49 Berta A. Dreyfus extending an interview offer for their Math Vacancy. At 10:09 AM, Claimant received another email from I.S. 49 Berta A. Dreyfus stating, "Please disregard the previous email. It was sent in error. Thank you."

09/01/2022-10/15/2022: Difficulties encountered with Onboarding. Once Joyell Simmons had her secretary inform Claimant that she rescinded her long-term offer, he immediately asked to have his Substitute Teacher Application withdrawn on October 1, 2022, prior to its approval. Joyell Simmons reneged on her initial offer to Claimant the math vacancy, and then she reneged on the long-term Substitute Math position she offered him. Claimant did not agree to be a day-to-day Substitute Teacher without benefits. He told her during their initial phone conversation that he had a long-term illness that was in remission.

09/06/2022-09/13/2022 Claimant worked 09/06/2022 at Murry Bergtraum HS, until

09/13/2022, when AP, Ms. Kidda told him that he should not return until he was on payroll. By this point, Claimant worked 6 days.

10/07/2022-December 12 Claimant's disability symptoms have significantly worsened as a result of his treatment by Joyell Simmons. Claimant was in remission of symptoms that he worked hard to achieve since 2012, and her multiple discriminatory acts towards him negatively impacted his health.

On 10/12/2022 Joyell Simmons sent Claimant an Over-Night envelope containing a non-payroll check for $950.

On or about October 28, 2022 Claimant became aware of the manner in which the New York City Department of Education unlawfully blocks people for no reason who resign or take a leave. Claimant resigned from the NYC DOE due to illness in 2009. At that time Claimant filed a disability discrimination charge against the NYC DOE for targeting him with harassment solely due to his disability.

The 'Problem Code' at the NYC DOE Human Resources' Office of Personnel Investigations is used for employees who have committed what the New York City Department of Education considers misconduct. Therefore the New York City Department of Education has considered Claimant guilty of some kind of misconduct without giving him a chance to clear his name and have a hearing on the matter, or not telling him when or why he is in this database before putting his fingerprints into a database which blocks him from obtaining full-time, permanent

5

employment with the NYC DOE. This is age and disability discrimination, and a filing with the EEOC has been filed.

4) **The items of damage or injuries claimed are**:

damages to reputation; emotional distress; impairment of Claimant's ability to secure future employment; impairment of earning power; tortious interference with business relations; malicious prosecution; abuse of process; fraud; and retaliation, defamation, libel and slander.

The items of damage or injuries claimed amount to $2 million dollars.

The claim and demand is hereby presented for adjustment and payment.

PLEASE TAKE FURTHER NOTICE that by reason of the foregoing, in default of the City of New York and the listed Defendants to pay the Claimant within the time limited for compliance with this demand by the applicable statutes, Claimant intends to commence an action against the City of New York and the listed Defendants to recover damages with interest and costs.

Dated: 12-13-2022

Fernando Nieves

Sworn or Affirmed before me on
The 13 day of December 2022

Notary Public

PATRICE G URBANSKI
Notary Public, State of New York
No. 01UR5062274
Qualified in Richmond County
Commission Expires June 24, 2026

6

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# CHARGE OF DISCRIMINATION

For Official Use Only – Charge Number:

EEOC Form 5A (October 2017)

| Personal Information | First Name: _Fernando_    MI: ____    Last Name: _Nieves_ ____<br><br>Address: _257 Seaview Avenue_    Apt.: _____    City: Staten Island<br><br>County: _Richmond_    State: _New York_    Zip Code: _10305_<br><br>Phone: _718-646-7469_    Cell ☐ Email: _FNieves987@gmail.com_ |
|---|---|
| **Who do you think discriminated against you?** | Employer ☐ Union ☐ Employment Agency ☐ Other Organization ☐ Organization ☒<br><br>Name: _New York City Department of Education_  Address: _52 Chambers Street_<br><br>Suite: _____  City: _New York_    State: _NY_    Zip Code: _10007_<br><br>Phone: _____ |
| **Why you think you were discriminated against?** | Race ☒ Color ☐ Religion ☐ Sex ☐ National Origin ☐ Age ☒<br><br>Disability ☒ Genetic Information ☐ Retaliation ☒ Other ☐ (specify) |
| **What happened to you that you think was discriminatory?** | **Date of <u>most recent job action</u> you think was discriminatory:** _ September 29, 2022_<br>**Also describe briefly <u>each job action</u> you think was discriminatory and when it happened (estimate).**<br>I am a 51-year-old disabled Hispanic male who began working in 2000 for the New York City Department of Education (NYC DOE), attaining tenure in 2004 and Satisfactory end-of-year ratings. In 2005, I was targeted by administrators at the NYC DOE solely because of my disabling illness for which I was getting counseling and treatment. Having submitted an ADA Medical Hardship Transfer in November 2005 to return to my former school where I successfully worked with my disability, the NYCDOE Medical Bureau refused to accept my transfer request, keeping me "stuck" in an environment that exacerbated my disability symptoms, leaving me open to two preventable psychiatric decompensations that worsened my disability. I had to take unpaid health leaves as my disability worsened. I tried transferring out of my school on my own in 2006, 2007, 2008, and 2009, but was conspicuously not offered a position. I asked my principal in 2009 for a Leave Extension I qualified for since an Administrative Law Judge deemed I was disabled as of the date of my third psychiatric decompensation at Leon Goldstein HS in 10/2008. The following day I received an adversarial letter bringing me up on unspecified charges related to school rules. Upon receipt of this letter, my condition immediately worsened. I felt intimidated and harassed so I resigned under duress in September 2009.<br>In 2010, 2011, and 2012, I applied and was accepted to the New Teacher Finder Candidate Network, but I did not receive any job offers. In total, I was not offered a position from 2006 through 2012. By this point, I felt disheartened and hopeless, and my disability deteriorated as I developed new symptoms that did not respond to traditional medications or therapy.<br>In late February 2022, I achieved the second remission of my life. On April 26, 2022, I completed the NYC Online Teacher Application and was accepted into the New York Finder Candidate Network on May 23, 2022. I maintained a log of all emails, phone calls, and interviews. On June 27, 2022, I interviewed with Principal Chertinko at the Urban Assembly NY Harbor School. He told me several times that he wanted me to return to campus during the following week to perform a demo lesson that displayed what I valued in my teaching. I created a demo lesson especially made for the Urban Assembly NY Harbor School and its location on Governors Island. I contacted Principal Chertinko several times pertaining to the demo lesson, and he finally contacted me 17 days after my interview to say the Hiring Committee decided to go with another candidate. I never met a Hiring Committee, was not given an opportunity to use the demo lesson asked of me, and considering the school's statistics show they have less than 5 Hispanic teachers, I felt discriminated against on several levels: race, retaliation, age, disability, and not receiving equal treatment in the hiring process even though I am disabled and fully qualified. |

I was then offered the math vacancy at Murry Bergtraum High School by the Principal, Joyell Simmons, on August 22, 2022.  I am fully credentialed for the math position, yet over a week later she downgraded her offer from a full vacancy to a long-term substitute position, offering lower pay and benefits without explanation.  I was asked to start working on the first day of school, September 6, 2022, and worked a full schedule with Mr. Kevin Ortiz, who did not have the caliber of my NYS Professional Mathematics Certification (7-12), for which I obtained 36 Undergraduate Mathematics Credits, passed the NYS Content Specialty Test in Mathematics (7-12), and obtained an additional 18 Graduate Mathematics Credits. I was told by Mr. Kevin Ortiz, my co-teacher, that he needed to pass one more NYS Exam to become initially certified.

On September 13, 2022, close to the end of my sixth day of working, my Assistant Principal suggested I not return until I was officially on payroll after completing an Onboarding Program for Substitute Teachers, a program I started prior to the beginning of the school year. However, even after purchasing a required $50 program on the Onboarding Website, I was not given access to portals I needed to finish the Onboarding Process.

On September 15, 2022, two days after I was asked not to return until fully on- boarded, I received an email from the NYC New Teacher Finder that showed an available math vacancy at Murry Bergtraum High School, a vacancy I qualified for and was offered on August 22, 2022.  I wondered, "Why did they have an unfilled math vacancy when I was fully qualified and already offered the same math vacancy?"

On September 26, 2022, I emailed a list of issues I was having with the Onboarding Process to Principal Simmons.  On September 29, 2022, I repurchased the required $50 program on the Onboarding Website.  This time it allowed me to access portals I was denied access to before, and I finished the process within an hour.

Soon after finishing the Onboarding Process, I received an email from Principal Simmons' Payroll Secretary, Jasmine Colon, stating that after a budget review, they could not afford my long-term math position. Having reneged on the two positions offered to me by Principal Simmons, I immediately canceled my Substitute Teacher Application because I never agreed to be a day-to-day substitute without health insurance benefits.  When my position was rescinded, Mr. Kevin Ortiz, who is much younger, took charge of all 5 classes even though my qualifications are superior.

As a result of the multiple discriminatory acts directed at me by Principal Jeffrey Chertinko and Principal Joyell Simmons, I was traumatized, and my remission quickly deteriorated into another psychiatric decompensation, an injury that is eight months old and counting.

Based on the above, I believe I have multiple valid and timely claims of age and disability discrimination and retaliation pursuant to the Americans with Disabilities Act of 1990 (ADA): 29 U.S.C. 621 et. seq., the Age Discrimination in Employment Act (ADEA): 42 U.S.C. 12112 et seq., Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. 791 et seq., and the New York State Human Rights Law ("HYSHRL"), N.Y. Executive Law 296 et. seq.

| **Signature and Verification** | I understand this charge will be filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address, phone, or email. I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br><br>I understand by signing below that I am filing a charge of employment discrimination with the EEOC.  I understand that the EEOC is required by law to give a copy of the charge, which includes my allegations and my name, to the organization named above. I also understand that the EEOC can only investigate charges of job discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or based on retaliation for filing a charge of job discrimination, participating in an investigation of a job discrimination complaint, or opposing job discrimination.<br><br>**I declare under penalty of perjury that the above is true and correct.**<br><br>Signature: _Fernando Nieves_   Date: __June 29, 2023__ |
| --- | --- |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5A, Charge of Discrimination, Issued October 2017.

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117**,** 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.**

The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

## 4. ROUTINE USES.

This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

## 5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.

Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against anyone, or for a union to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of rights under the Act.