Fernando Nieves, Jr.
257 Seaview Avenue
Staten Island, NY 10305
917-636-3394
FNieves987@gmail.com

**October 27, 2025**

**MEMO ENDORSED**

United States District Court
Southern District of New
York 500 Pearl Street
New York, New York 10007

**Letter Motion for Judicial Assistance in Obtaining Records, Enforcement of Rights, and Reasonable Accommodations**
   *Re: Case No. 1:24-CV-06267-JAV*

Honorable Judge Vargas:

I respectfully submit this letter to request the Court's urgent assistance in light of severe and worsening impairments, procedural irregularities, and barriers to evidence that are directly impacting my ability to participate meaningfully in this litigation.

**Introduction and Purpose**

The purpose of this letter is to seek the Court's intervention and support on three critical fronts: (1) to obtain essential video footage and administrative records from the New York State Office of Mental Health and Richmond University Medical Center; (2) to address the unlawful and prejudicial denial of my medical records by Dr. Blackman[1]; and (3) to request reasonable accommodations for my severe psychiatric, neurological, and physical disabilities, which have significantly impaired my litigation capacity. Without the Court's assistance, I am unable to access key evidence, organize my case, or comply with procedural requirements, placing me at risk of further prejudice and denial of due process.

These requests are grounded in the Federal Rules of Civil Procedure, including Rule 34(a) (discovery of documents and electronically stored information), Rule 45 (subpoenas to non-parties), and Rules 37(a), (b), and 45(g) (enforcement and sanctions for noncompliance), as well as 28 U.S.C.A. § 2521(a) (West).
(b) (subpoena and contempt authority in federal court). My right to access my medical records is further protected by N.Y. Pub. Health Law § 18 (McKinney) and the HIPAA Privacy Rule, 45 C.F.R. § 164.524. The legal principles supporting these rights are well established in Kapeleris v. Riordan, 89 A.D.3d 903, 904, 933 N.Y.S.2d 92, 224 (2011); *Olszewski v. State of New York*, 286 A.D.In re Millan, 189 Misc. 2d 419, 730 N.Y.S.2d 392, 396 (Sup. Ct. 2001), rev'd sub nom. People v. Millan, 295 A.D.2d 267, 743 N.Y.S.2d 872 (2002); and Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016). The prejudicial impact of the denial and destruction of evidence is further addressed by the spoliation doctrine and adverse inference principles, as discussed in Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir.

---

[1] I am not sure of her name, but I can identify her.

1

2002).

I have preserved and referenced supporting documentation and exhibits, including but not limited to Exhibit Y (ReportComplete.pdf, forensic psychiatric evaluation), Exhibit AU (SSDI Determination), and Exhibit Z (10143791 File Destroyed Letter.pdf), as detailed in my Third Amended Complaint and accompanying filings. These materials provide objective evidence of my disabilities, the procedural barriers I have faced, and the necessity of the accommodations and judicial intervention I now seek.

**Summary of Disabilities and Impairments**

I am a qualified individual with a multifaceted psychiatric and neurological disability, including major depressive disorder, anxiety, trauma-related conditions, and new neurological symptoms from recent psychiatric traumas that have resulted in a constellation of severe symptoms including:

- Marked changes in vision and stability, leading to more than ten falls in recent weeks;
- Impaired speech and writing, making it extremely difficult to communicate and draft legal documents;
- Significant lower back pain and pain in my legs, which limit my mobility and have caused unexpected falls and re-injury of my left ankle;
- Worsening daily fatigue, a much slower gait, and pronounced cognitive slowing;
- Difficulty organizing and processing the voluminous evidence in this case, to the point where I am at risk of losing critical arguments and claims simply because I cannot manage or present the evidence in a timely or coherent manner;
- New neurological symptoms for which I am scheduled to see a doctor imminently.

These impairments have substantially limited my ability to read and understand legal documents, comply with discovery obligations, organize and present evidence, meet deadlines, and participate in hearings or other proceedings. The cumulative effect of these physical and cognitive symptoms, in addition to my psychiatric disability, has rendered me unable to manage the demands of pro se litigation without significant accommodation and support. I am prepared to provide supporting medical documentation, forensic reports, and referenced exhibits upon request.

**Recent Medical and Trauma Events**

On September 7, 2025, I began experiencing acute psychiatric symptoms, including agitation, confusion, and destructive behavior, of which I have only vague and fragmented memories. This episode was precipitated by an involuntary interruption in my prescribed medication regimen— specifically, the unavailability of Marplan (an MAO inhibitor) for approximately 6 days due to an underproduction issue. The abrupt discontinuation of Marplan, in the context of my complex daily regimen, resulted in a significant negative reaction, exacerbating my psychiatric symptoms and impairing my cognitive functioning. This episode and its aftermath have directly impaired my ability to organize evidence, respond to motions, and comply with court deadlines, further compounding the barriers to my meaningful participation in this litigation. My research did not find "official" sources specifically addressing the abrupt

2

discontinuation of Marplan after long-term use. Based on external knowledge, you can find reliable information on this topic from the following sources:

- FDA Website: Provides official prescribing information for Marplan, including details on discontinuation.(https://accessdata.fda.gov)
- Drugs.com: Offers detailed information about Marplan, including potential side effects and warnings related to stopping the medication. (https://www.drugs.com)
- MedlinePlus: A trusted resource from the U.S. National Library of Medicine with information on medications, including Marplan.(https://medlineplus.gov)
- Mayo Clinic: Provides reliable information on medications and their effects. (https:www.mayoclinic.org)

On September 13, 2025, police officers and EMTs entered my home while I was asleep, after my acute symptoms had already significantly decreased. Approximately four police officers with full gear and four EMTs entered my bedroom, making me feel as though I was a highly sought criminal rather than a psychiatrically disabled person who had experienced an episode beyond my control. Their presence was intimidating as they did not allow me to properly dress before being transported to Richmond University Medical Center located at 355 Bard Avenue, NY, approximately a 20 to 25-minute drive from my home. I was tightly handcuffed behind my back and shacked at my feet, then led out my front door in full view of my neighbors, which was humiliating, instantly heightening my anxiety and agoraphobia. The restraints were so tight that walking to the ambulance was extremely difficult and painful.

During the ambulance ride, the handcuffs and shackles remained excessively tight, causing me to repeatedly bang into the interior of the vehicle and support poles. The pain and anguish led me to cry and beg for the restraints to be loosened, but my pleas were ignored, and I observed one EMT snicker at my distress. I remained in this painful situation for 20–30 minutes, resulting in visible bruises on my wrists and ankles. More significantly, the mistreatment during transport caused an injury to my lower back, which has since led to unexpected falls and a reinjury of my left ankle. These new physical symptoms have compounded my existing psychiatric symptoms and have directly impaired my ability to organize evidence, respond to motions, and comply with court deadlines, as documented in my medical records and supporting exhibits.

Upon arrival at the hospital, I made it clear to staff that I did not agree to admission, thereby classifying myself as "involuntarily admitted" against my will. Despite my objections, I was provided with unwanted medical treatment. On two occasions, I was forcibly restrained and injected with medication without my knowledge or consent. My attending physician, Dr. Blackman, changed my medications and refused to provide me with my complete medical record. The cumulative effect of these events—including the trauma of the intervention, the physical injuries, and the involuntary hospitalization—has led to a marked deterioration in both my psychiatric and physical health, further limiting my ability to participate in this litigation and exacerbating the barriers to my effective case management and access to justice.

**Denial of Medical Records and Evidence Barriers**

A central barrier to my ability to pursue this case has been the unlawful and prejudicial denial of my five-page release medical records by Dr. Blackman at Richmond University Medical

3

Center. When I requested the same medical record routinely provided to other patients, Dr. Blackman initially agreed, but after reviewing the fifth page, she abruptly refused, stating, "Mr. Nieves, your time is finished," and withheld the records. No written explanation or statutory justification was provided for this denial, in direct contravention of N.Y. Pub. Health Law § 18 (McKinney), which requires that any denial of access to medical records be accompanied by a written statement specifying the grounds for refusal and advising the patient of their right to appeal. The HIPAA Privacy Rule, 45 C.F.R. § 164.524, similarly mandates timely access to protected health information and requires that any denial be in writing, with specific grounds and an opportunity for review. Dr. Blackman's actions failed to comply with both state and federal law, and no documentation was provided to justify the refusal.

Earlier that day, I contacted Mr. Nicholas Cartagena, Esq., Deputy Commissioner & Counsel of the New York State Office of Mental Health, who confirmed that my case had been discussed several days prior and that an order had been issued not to treat me in this manner. Mr. Cartagena later stated he did not know why the order was disobeyed, confirming that the denial of my records was improper and undocumented.

The denial of my medical records has severely prejudiced my ability to understand the medical basis for my treatment, seek appropriate follow-up care, and substantiate my claims in this litigation.
Without access to these records, I am unable to verify the circumstances of my admission, the medications administered, or the rationale for changes in my treatment. This has impaired my ability to challenge the factual assertions of defendants, respond to dispositive motions, and present a complete evidentiary record. The lack of transparency and denial of access to documents have compounded my distress and confusion during an already vulnerable time, and have deprived me of procedural due process as protected by the Fourteenth Amendment and 42 U.S.C.A. § 1983 (West).

In addition, I have been unable to obtain critical video footage and administrative records from the New York State Office of Mental Health and Richmond University Medical Center.. These materials—including incident reports, admission and discharge paperwork, and any available video footage (such as security camera, ambulance, or body camera recordings)—are essential to establishing the facts of my case, documenting the conduct of staff and officials, and supporting my claims regarding the nature of my treatment and the procedural irregularities that have occurred.

**To clarify, I specifically seek the following records and video evidence:** - All incident reports, staff logs, and administrative records relating to my admission, treatment, and discharge from Richmond University Medical Center and the New York State Office of Mental Health, from September 13–24, 2025; - Security camera footage from all relevant hospital hallways, intake areas, and patient rooms during my admission and discharge; - Ambulance video footage and body camera footage from police and EMTs involved in my transport and admission on September 13, 2025; - Copies of all admission and discharge paperwork, including any forms I was asked to sign (especially those withheld or not shown to me in full); - Any correspondence or documentation relating to the order referenced by
Mr. Cartagena regarding my treatment and access to records.

The inability to access these materials has directly impaired my ability to verify the timeline and nature of adverse actions, support my damages claims, and respond to the defenses of the

opposing parties. I respectfully request the Court's intervention, pursuant to Fed. R. Civ. P. 45 (for subpoenas to non-parties) and Rule 37 (for motions to compel and sanctions), to ensure that these materials are produced and preserved for the record. If the entities in question fail to comply with any subpoena or order, I request that the Court enforce compliance through all available remedies, including orders to compel, sanctions, and, if necessary, contempt proceedings under Rule 45(g) and 28 U.S.C.A. § 2521(b) (West).

**Legal and Procedural Support**

The denial of my medical records and the ongoing barriers to obtaining critical evidence are not only unjust but also unlawful under both state and federal law. Under N.Y. Pub. Health Law § 18 (McKinney), I am entitled to timely access to my medical records upon written request, and any denial must be accompanied by a written explanation specifying the statutory grounds for refusal. Dr. Blackman's refusal to provide my 5-page release medical record—especially after initially agreeing and then withholding it without any written justification—constitutes a clear violation of this statute. The law is explicit that such procedural failures are actionable and cannot be excused by mere administrative discretion. Federal law provides parallel protections: the HIPAA Privacy Rule, 45 C.F.R. § 164.524, guarantees patients the right to inspect and obtain copies of their protected health information. Any denial must be in writing, must specify the grounds, and must provide an opportunity for review.
Dr. Blackman's unexplained and undocumented denial of my records is a direct violation of these federal requirements.

Moreover, as a patient in a state-regulated facility, I am entitled to procedural due process under the Fourteenth Amendment, enforceable through 42 U.S.C.A. § 1983 (West). Courts have consistently held that denial of access to records necessary to understand, challenge, or seek redress for treatment constitutes a deprivation of a protected liberty or property interest, particularly when it impairs the ability to pursue legal claims or medical care. See Kapeleris v. Riordan, 89 A.D.3d 903, 904, 933 N.Y.S.2d 92, 224 (2011); *Olszewski v. State of New York*, 286 A.D.2d 117, 730 N.Y.S.2d 396 (3d Dep't 2001); Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016).

In addition to these statutory and constitutional rights, the Federal Rules of Civil Procedure provide the Court with broad authority to order the production of documents and electronically stored information

(Rule 34(a)), to issue subpoenas to non-parties for the production of records and tangible things (Fed. R. Civ. P. 45), and to enforce compliance through motions to compel (Rule 37(a)), sanctions for noncompliance (Rule 37(b)), and contempt proceedings (Fed. R. Civ. P. 45(g)). The Court's authority to issue and enforce subpoenas is further supported by 28 U.S.C.A. § 2521(a)-(b) (West), which empowers the Court to compel compliance and punish contempt in connection with discovery and evidentiary orders.

The destruction or withholding of evidence by defendants or third parties also implicates the spoliation doctrine and adverse inference principles. As recognized in Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002), when a party with control over evidence fails to preserve or produce it, and the evidence is relevant to claims or defenses, the Court may impose sanctions, draw adverse inferences, or take other remedial measures to prevent prejudice.

Should the entities from whom I seek records and video footage fail to comply with any Court order or subpoena, I am prepared to promptly file a motion to compel production under Fed. R. Civ. P. 37(a), supported by proof of service and correspondence documenting my requests and denials. If noncompliance persists, I will request that the Court impose sanctions under Fed. R. Civ. P. 37(b), including but not limited to an order of contempt, adverse inferences, or other relief necessary to ensure compliance and prevent further prejudice. The Court's authority to enforce compliance and punish contempt is further supported by Rule 45(g) and 28 U.S.C.A. § 2521(b) (West). I am prepared to supplement the record with all relevant correspondence, written requests, and supporting exhibits as needed to facilitate the Court's enforcement of its orders.

These principles are well established in the case law. In Kapeleris v. Riordan, 89 A.D.3d 903, 904, 933 N.Y.S.2d 92, 224 (2011), the Appellate Division held that a hospital's refusal to provide medical records in accordance with Public Health Law § 18 was unlawful, entitling the patient to damages and injunctive relief. In *Olszewski v. State of New York*, 286 A.D.2d 117, 730 N.Y.S.2d 396 (3d Dep't 2001), the court found that denial of access to medical records without proper justification or written explanation violated both statutory and constitutional rights. The Second Circuit in Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016), reaffirmed that HIPAA and New York law provide patients with enforceable rights to access their medical records, and that arbitrary denial is actionable.

Federal Rules of Civil Procedure, including Rule 34(a) (discovery of documents and electronically stored information), Fed. R. Civ. P. 45 (subpoenas to non-parties), and Fed. R. Civ. P. 37(a), (b) (enforcement and sanctions), provide the Court with broad authority to order and enforce the production of records and evidence from both parties and non-parties. The Court's power to issue and enforce subpoenas is further supported by 28 U.S.C.A. § 2521(a)-(b) (West), which authorizes the issuance of subpoenas for discovery and evidence, and permits the Court to punish disobedience or resistance to its lawful orders by contempt.

The spoliation doctrine and adverse inference principles further support judicial intervention where evidence is destroyed or withheld. As the Second Circuit explained in Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 107 (2d Cir. 2002), when a party with control over evidence fails to preserve or produce it, and the evidence is relevant to claims or defenses, the Court may impose sanctions, draw adverse inferences, or take other remedial measures to prevent prejudice.

The prejudicial impact of these violations is profound: I have been unable to seek appropriate follow- up care, understand the medical basis for my treatment, or substantiate my claims in this litigation. The inability to access video footage and administrative records further impedes my ability to establish the facts of my case and defend my rights. Judicial intervention is therefore not only warranted but essential to prevent further prejudice and to ensure that all relevant evidence is preserved and produced for the record.

Should the entities from whom I seek records and video footage fail to comply with any Court order or subpoena, I am prepared to promptly file a motion to compel production under Fed. R. Civ. P. 37(a), supported by proof of service and correspondence documenting my requests and denials. If noncompliance persists, I will request that the Court impose sanctions under Fed. R. Civ. P. 37(b), including but not limited to an order of contempt, adverse inferences, or other relief necessary to ensure compliance and prevent further prejudice. The Court's authority to

enforce compliance and punish contempt is further supported by Rule 45(g) and 28 U.S.C.A. § 2521(b) (West). I am prepared to supplement the record with all relevant correspondence, written requests, and supporting exhibits as needed to facilitate the Court's enforcement of its orders.

**Specific Requests for Court Assistance, Subpoenas, and Accommodations**

In light of the foregoing, I respectfully request that the Court grant the following relief to ensure my meaningful participation in this matter and to remedy the ongoing prejudice caused by the denial of records and evidence:

- **Order the production of all paperwork and video evidence** related to my treatment and hospitalization, including incident reports, admission and discharge paperwork, and any available video footage (such as security camera, ambulance, or body camera recordings) from the New York State Office of Mental Health and Staten Island Richmond Medical Center (pursuant to Fed. R. Civ. P. 34(a), 45; 28 U.S.C.A. § 2521(a) (West)).

- **Issue subpoenas under Fed. R. Civ. P. 45** to compel production from non-party entities that have not responded to prior requests, and, if necessary, order preservation of all relevant evidence to prevent destruction or spoliation (Fed. R. Civ. P. 45, 37(b); 28 U.S.C.A. § 2521 (West)).

- **Order the immediate production of my 5-page release medical records** from Dr. Blackman at Staten Island Richmond Medical Center, and require a written explanation for any continued refusal, consistent with N.Y. Pub. Health Law § 18 (McKinney) and the HIPAA Privacy Rule, 45 C.F.R. § 164.524, and as recognized in Kapeleris v. Riordan, 89 A.D.3d 903, 904, 933 N.Y.S.2d 92, 224 (2011); *Olszewski v. State of New York*, 286 A.D.In re Millan, 189 Misc. 2d 419, 730 N.Y.S.2d 392, 396 (Sup. Ct. 2001), rev'd sub nom. People v. Millan, 295 A.D.2d 267, 743 N.Y.S.2d 872 (2002); Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016), Carter v. HealthPort Techs., LLC, 822 F.3d 47 (2d Cir. 2016).

- **Grant extended deadlines for all filings and responses** in this matter, in recognition of my severe physical, neurological, and psychiatric impairments, and as a reasonable accommodation under the Americans with Disabilities Act and the Court's inherent authority (see Exhibit Y, ReportComplete.pdf; Exhibit AU, SSDI Determination).

- **Provide simplified instructions and procedural guidance** to assist me in navigating the litigation process given my cognitive and communication limitations, as supported by my medical and forensic documentation.

- **Permit the submission of filings in accessible formats**, including electronic, dictated, or otherwise assisted submissions as needed, to accommodate my documented impairments.

- **Appoint a special master, legal advisor, or other support** to assist with evidence management and legal organization, if the Court deems it appropriate, to address

7

my documented difficulties in managing the voluminous record (see, e.g., Fed. R. Civ. P. 53; relevant case law supporting accommodations for pro se litigants with disabilities).

- **Grant any additional accommodations or relief** the Court finds necessary to ensure my fair and meaningful participation in this litigation, including orders to preserve all relevant evidence and to address any further procedural irregularities.

If the entities from whom I request records or video footage fail to comply with the Court's orders or subpoenas, I respectfully request that the Court enforce compliance through appropriate remedies, including motions to compel (Fed. R. Civ. P. 37(a)), sanctions for noncompliance (Fed. R. Civ. P. 37(b), 45(g)), and, if necessary, orders to show cause or contempt proceedings (28 U.S.C.A. § 2521(b) (West)). I am prepared to provide supporting medical, forensic, or administrative documentation as needed.

**Conclusion and Respectful Plea**

Given the severity of my disabilities, the recent trauma and injuries, the unlawful denial of my medical records, and the ongoing barriers to obtaining critical evidence, I am unable to participate in this litigation without the Court's intervention and support. I respectfully urge the Court to grant the accommodations and assistance outlined above to prevent further prejudice and to ensure that my rights are fully and fairly adjudicated.

I am prepared to supplement the record with any additional medical, forensic, or administrative evidence the Court may require and I am grateful for the Court's attention to these urgent matters and for any relief the Court can provide to enable my meaningful participation in this case.

Respectfully submitted,

*Fernando Nieves*
Fernando Nieves, Jr.
Plaintiff (Pro Se)

cc: **Oriana Vigliotti**
    Law Office of Robert T. Reilly, Esq.
    NYSUT Office of General Counsel
    120 Broadway
    Suite 1360
    New York, NY 10271
    212-228-3382
    Fax: 212-228-9253
    Email: oriana.vigliotti@nysut.org

cc: **Conner Quinn**
    New York City Law Department
    Labor and Employment Law Division
    100 Church Street
    Ste 2-318
    New York, NY 10007
    212-356-3574
    Email: coquinn@law.nyc.gov

Plaintiff's motion to compel is denied. The Court has not yet set a discovery schedule, and it is unclear whether the parties have held a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(d)(1). Thus, any request for discovery is premature. Moreover, the third-party discovery sought by Plaintiff is not of any obvious relevance to this case. This action involves claims of employment discrimination. Plaintiff's current request is for medical records from a recent hospitalization in September 2025, a period after his employment had ended. The Clerk shall terminate ECF No. 55.

Dated: October 28, 2025

*Jeannette Vargas*
JEANNETTE A. VARGAS
U.S. DISTRICT JUDGE